STATE OF NORTH CAROLINA v. JONATHAN HOWARD NORTON

No. COA10-1544

(Filed 21 June 2011)

**1. Motor Vehicles— driving while impaired—appreciable impairment—sufficient evidence—motion to dismiss properly denied**

The trial court did not err in a driving while impaired case by denying defendant's motion to dismiss for insufficient evidence. Evidence that defendant consumed an impairing substance and then drove in a faulty manner was sufficient to show appreciable impairment.

**2. Witnesses— expert—testimony not outside scope of expertise—no error**

The trial court did not err in a driving while impaired case by allowing a witness accepted as an expert forensic toxicologist to testify about the effects of cocaine on the body. As a trained expert in forensic toxicology with degrees in biology and chemistry, the witness was in a better position to have an opinion on the physiological effects of cocaine than the jury.

Appeal by Defendant from judgments entered 23 April 2010 by Judge James U. Downs in Buncombe County Superior Court. Heard in the Court of Appeals 23 May 2011.

*Attorney General Roy Cooper, by Assistant Attorney General William P. Hart, Jr., for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender S. Hannah Demeritt, for Defendant.*

STEPHENS, Judge.

*Factual and Procedural Background*

On 2 November 2009, Defendant Jonathan Howard Norton ("Norton") was indicted on three counts of failing to remain at the scene of an accident involving property damage, two counts of assault with a deadly weapon against a government official, two counts of felony driving to elude arrest, and one count each of possession of drug paraphernalia, reckless driving to endanger, assault on a government official, resisting a public officer, speeding, driving while impaired, and attempted robbery with a dangerous weapon. Norton pled not guilty to all charges, and the case was tried before a jury at the 19 April 2010 Criminal Session of the Buncombe County Superior Court, the Honorable James U. Downs presiding.

The evidence presented at trial tended to show the following: At 6:45 p.m. on 15 September 2009, Asheville Police Department Officer Tracey Edmonds ("Officer Edmonds") responded to a civil disturbance call at a motel in Asheville, North Carolina. Officer Edmonds observed Norton breaking the windows of a vehicle in the motel parking lot. When Officer Edmonds approached Norton, whom Officer Edmonds described as being "in a very angry and enraged state," Norton got into the vehicle and exited the parking lot, driving on the wrong side of the road into oncoming traffic. Officer Edmonds then

activated his blue lights and siren and attempted to pursue. Norton continued on the wrong side of the road, ran a red light at 60 to 70 miles per hour, and struck another vehicle. After losing sight of Norton, Officer Edmonds returned to the motel. While Officer Edmonds was at the motel conferring with another officer, Norton drove past and the officers attempted to stop his vehicle. Norton accelerated to 65 to 75 miles per hour in a 35-mile-per-hour zone and escaped again.

Several minutes later, Norton returned to the motel a third time and "did doughnuts in the middle of the road and ran head on into oncoming traffic." He then "flipped gestures toward[] law enforcement, screamed profanities, tried to get [them] to pursue him, hollered, 'Come on,' and cuss words." Norton then drove into oncoming lanes of traffic repeatedly, forcing other motorists to move out of his way to avoid collision with his vehicle. When officers pursued, Norton drove 40 to 45 miles per hour through a parking lot, entered a tunnel at a high rate of speed while driving on the wrong side of the road, ran several red lights, drove through a metal gate and onto a golf course, "cut[] doughnuts on the golf course," drove through a fence in order to reenter the road, and attempted to run several oncoming motorists off the road by driving toward them on the wrong side of the road before officers broke off the pursuit.

At 9:30 that same night, police spotted Norton's vehicle again and pursued him. During the chase, Norton reached speeds of 100 miles per hour, passed other cars on the emergency shoulder, changed lanes erratically, drove without his hands on the wheel, opened his door while driving and hung his limbs out of the car, and threw objects at the police pursuing him. After colliding with a patrol vehicle, Norton lost control of his vehicle and came to a stop on the side of the road. Norton then attempted to flee on foot. North Carolina State Highway Patrol Master Trooper Rocky Deitz ("Master Trooper Deitz"), who assisted in Norton's arrest, testified that Norton appeared to be in a rage, had "superhuman strength," and resisted arrest even after police shot him with a Taser. After Norton was arrested, he underwent a blood test, which revealed an alcohol concentration of 0.03 grams per 100 milliliters of blood and the presence of cocaine and a cocaine metabolite indicative of recent cocaine usage. The test did not indicate the concentration of cocaine or of the cocaine metabolite.

Sometime after his flight from Officer Edmonds and before his arrest, Norton struck a second civilian vehicle and left the scene of

that accident. The driver of the other vehicle testified that Norton threatened her and that Norton smelled of alcohol.

Following the presentation of evidence, on 23 April 2010, the jury returned guilty verdicts on the following charges: two counts of failing to remain at the scene of an accident and one count each of assault with a deadly weapon on a government official, non-felonious speeding to elude arrest, possession of drug paraphernalia, felonious fleeing to elude arrest, reckless driving, speeding 100 miles per hour in a 60-mile-per-hour zone, and driving while impaired. The jury returned verdicts of not guilty on the charges of assault on a government official and resisting a public officer. The jury deadlocked on one count of assault with a deadly weapon on a government official and one count of failing to remain at the scene of an accident. Norton was sentenced to 21 to 26 months for assault with a deadly weapon on a government official, 10 to 12 months for felonious fleeing to elude arrest, 45 days for failure to remain at the scene of an accident, and one year for impaired driving. Norton filed notice of appeal to this Court on 3 May 2010 only for the charge of driving while impaired.

*Discussion*

**[1]** On appeal, Norton first argues that the trial court erred in denying his motion to dismiss on the ground that the evidence was insufficient to support the charge of driving while impaired. Such a motion presents a question of law and is reviewed *de novo* on appeal. *See State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993). The question for this Court is whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). The evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

To support a charge of driving while impaired, the State must prove that the defendant has "drunk a sufficient quantity of intoxicating beverage or taken a sufficient amount of narcotic drugs, to cause him to lose the normal control of his bodily or mental faculties, or both, to such an extent that there is an appreciable impairment of either or both of these faculties." *State v. Harrington*, 78 N.C. App.

**STATE v. NORTON**

[213 N.C. App. 75 (2011)]

39, 45, 336 S.E.2d 852, 855 (1985). However, "the State need not show that the defendant [was] 'drunk,' *i.e.*, that his or her faculties [were] materially impaired." *Id.* (emphasis in original). "[T]he fact that a motorist has been drinking, when considered in connection with faulty driving or other conduct indicating an impairment of physical and mental faculties, is sufficient *prima facie* to show a violation of [N.C. Gen. Stat. § 20-138.1]."[1] *State v. Coffey*, 189 N.C. App. 382, 387, 658 S.E.2d 73, 76 (2008) (internal quotation marks, ellipsis, and citations omitted). It follows that evidence of such faulty driving, along with evidence of consumption of *both* alcohol *and cocaine*, is likewise sufficient to show a violation of section 20-138.1.

In this case, Norton contends that the State did not offer any evidence to provide a factual basis for finding that he was impaired while driving his vehicle, but instead relied on Master Trooper Deitz' "naked conclusion" that, in the trooper's opinion, Norton "had consumed some impairing substance so as to appreciably impair his physical and mental abilities." As an example of a case lacking sufficient evidence, Norton cites *State v. Hough*, 229 N.C. 532, 532, 50 S.E.2d 496, 497 (1948), in which an officer who arrived on the scene of a traffic accident 25 to 30 minutes after the accident occurred testified that he smelled "something on [the suspect's] breath" and believed that the suspect was impaired. In that case, a second officer also believed that the suspect was impaired, but neither officer was able to say whether the impairment was a result of drinking or of the accident. *Id.*

This case presents an altogether different situation from *Hough* because the witnesses to Norton's impairment observed his behavior as he drove, not sometime after. Multiple witnesses testified as to Norton's faulty driving and other conduct supporting the conclusion that his mental faculties were impaired, including that he "had a very wild look on his face" and appeared to be in a state of rage; drove recklessly without regard for human life; drove in circles in the middle of a busy street and on a golf course; twice collided with other motorists; drove on the highway at speeds varying between 45 and 100 miles per hour; drove with the car door open and with his left leg and both hands "hanging out the door"; struck a patrol vehicle; and exhibited "superhuman" strength when officers attempted to apprehend him. Furthermore, whereas the evidence of alcohol consumption in *Hough* was weak, in this case, blood tests established Norton's

---

1. A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State . . . [w]hile under the influence of an impairing substance." N.C. Gen. Stat. § 20-138.1 (2009).

alcohol and cocaine use, and one witness testified that she smelled alcohol on Norton when he exited his car at a traffic light. This evidence was sufficient to permit the jury to determine that Norton drove while impaired.

Nevertheless, Norton argues that the evidence of cocaine and cocaine metabolites in his bloodstream was insufficient to establish that he was impaired because the tests did not indicate the blood concentrations of the substances. Norton also cites *State v. Scott*, 356 N.C. 591, 597, 573 S.E.2d 866, 869-70 (2002), for the proposition that reckless driving by itself is not proof of impairment. However, as already stated, evidence that a defendant consumed an impairing substance and then drove in a faulty manner is sufficient *prima facie* to show appreciable impairment. *See Coffey*, 189 N.C. App. at 387, 658 S.E.2d at 76. In this case, there is plenary independent evidence both that Norton drove recklessly and that he consumed alcohol and cocaine. This evidence was clearly sufficient to support the charge of driving while impaired. *See id.* Accordingly, Norton's argument that there was insufficient evidence to allow the driving while impaired charge to go to the jury is overruled.

[2] Norton next argues that the trial court erred in allowing a witness accepted as an expert forensic toxicologist to testify about the effects of cocaine on the body because this testimony was outside of the witness's area of expertise. The test for the admissibility of expert testimony under Rule 702 of the North Carolina Rules of Evidence requires, *inter alia*, that the witness be qualified as an expert within the area of testimony. *State v. Goode*, 341 N.C. 513, 529, 461 S.E.2d 631, 640 (1995).[2] By allowing the testimony, the trial judge implicitly ruled that the witness was qualified to testify on that subject. *State v. Perry*, 275 N.C. 565, 572, 169 S.E.2d 839, 844 (1969) ("In the absence of a request by the appellant for a finding by the trial court as to the qualification of a witness as an expert, it is not essential that the record show an express finding on this matter, the finding, one way or the other, being deemed implicit in the ruling admitting or rejecting the opinion testimony of the witness.").

Initially, we note that because Norton did not object to the testimony at trial, we may review this issue only for plain error. N.C. R.

---

2. "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified· as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C. Gen. Stat. § 8C-1, Rule 702(a) (2010).

App. P. 10(a)(4).[3] Furthermore, the decision of a trial court to allow expert testimony is discretionary. *Goode*, 341 N.C. at 529, 461 S.E.2d at 640-41. Because our Supreme Court has held that discretionary decisions of the trial court are not subject to plain error review, *State v. Steen*, 352 N.C. 227, 256, 536 S.E.2d 1, 18 (2000) (stating that the North Carolina Supreme Court "has not applied the plain error rule to issues which fall within the realm of the trial court's discretion"), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001), we need not address Norton's argument on this issue. Nevertheless, in the interest of ensuring that Norton had a fair trial, we address the merits of Norton's argument.

As previously held by our Supreme Court, "[i]t is not necessary that an expert be experienced with the identical subject matter at issue or be a specialist, licensed, or even engaged in a specific profession." *Goode*, 341 N.C. at 529, 461 S.E.2d at 640 (citations omitted). Rather, "[i]t is enough that the expert witness because of his expertise is in a better position to have an opinion on the subject than is the trier of fact." *Id.* As a trained expert in forensic toxicology with degrees in biology and chemistry, the witness in this case was plainly in a better position to have an opinion on the physiological effects of cocaine than the jury.

Furthermore, under the plain error standard, a defendant has the burden of showing "that a different result probably would have been reached but for the error" or "that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." *State v. Wilson*, —— N.C. App. ——, ——, 691 S.E.2d 734, 738 (2010). The expert testimony on the effects of cocaine and alcohol on the body was not essential to the outcome of the trial as Norton's conviction was supported by plenary evidence of faulty driving and other erratic behavior in combination with blood tests showing that he consumed

---

3. The plain error rule

> is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where the error is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings . . . .

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (internal brackets, quotation marks, ellipses, and emphasis omitted) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (footnote omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)).

cocaine and alcohol. As such, Norton is unable to meet the burden of showing "that a different result probably would have been reached but for" the testimony of the forensic toxicologist on the effects of cocaine. *Id.* Thus, we cannot say that there was error, much less plain error.

Based on the forgoing, we conclude that Norton received a fair trial, free of error.

NO ERROR.

Chief Judge MARTIN and Judge THIGPEN concur.