IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-409

No. COA20-190

Filed 3 August 2021

Graham County, No. 16 CRS 000147

STATE OF NORTH CAROLINA

v.

KIMBERLY GAIL TEESATESKIE, Defendant.

Appeal by Defendant from judgment entered 12 July 2019 by Judge J. Thomas Davis in Graham County Superior Court. Heard in the Court of Appeals 9 February 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General John W. Congleton, for the State.*

*Hynson Law, PLLC, by Warren D. Hynson, for defendant-appellant.*

MURPHY, Judge.

A trial court properly denies a defendant's motion to dismiss charges of driving while impaired and felony death by motor vehicle when there is sufficient evidence of the defendant's impairment. Sufficient evidence of impairment is such evidence, viewed in the light most favorable to the State, as a reasonable mind might accept as adequate to support the conclusion that the defendant was appreciably impaired, either mentally or physically. Here, the trial court properly denied Defendant's

motion to dismiss, where there was sufficient evidence of appreciable physical impairment due to Defendant's failure of multiple sobriety tests, unsteady gait, lethargy, slurred speech, and a drug recognition expert's opinion that Defendant was impaired.

¶ 2 Additionally, a defendant must show an abuse of discretion to be entitled to relief for a trial court's error in allowing expert testimony that does not comply with the requirements of North Carolina Rule of Evidence 702. However, when the substance of improperly admitted expert testimony is admitted properly via another source, a defendant cannot show prejudice. Here, even assuming the trial court abused its discretion in admitting expert testimony indicating that Hydrocodone could have been in Defendant's blood test and been hidden by other results, this assumed abuse of discretion was not prejudicial since there was evidence that Defendant admitted to an officer that she had taken Hydrocodone.

## BACKGROUND

¶ 3 On 1 January 2015, around 10:45 p.m., Defendant Kimberly Teesateskie was driving back from a party with her best friend, Maggie Whachacha, in the passenger seat when Defendant drove off Snowbird Road, a state-maintained highway, and struck a tree. Defendant sustained minor injuries; however, Ms. Whachacha did not survive her injuries. As a result of the accident, Defendant was charged with felony death by motor vehicle, reckless driving, driving while impaired, and murder.

Defendant's murder charge was later voluntarily dismissed by the State.

¶ 4        When first responders arrived at the scene of the accident, they had Defendant leave her vehicle and walk to a patrol car so that emergency services could try to help Ms. Whachacha. On the way to the car, Defendant walked normally and without need of assistance. One of the first responders testified Defendant struggled to stay awake and fell asleep while sitting in his patrol car. Additionally, an emergency medical technician ("EMT") testified that, after the accident, Defendant could hear and understand him, had properly functioning and reacting eyes, good pulse and blood pressure, and was able to answer questions competently, such that he did not believe Defendant had ingested any impairing substance.

¶ 5        However, Trooper Harold Hoxit of the North Carolina Highway Patrol, upon speaking with Defendant at the scene, was concerned that she was impaired. Defendant spoke with a "thick fat tongue, sort of mumbling her speech" and seemed to struggle to stay awake. She was responsive and Trooper Hoxit did not notice a smell of alcohol or observe glassy eyes, although he did notice she swayed when walking and he believed it seemed like her balance was off. Defendant claimed to Trooper Hoxit that she was blinded by a truck's headlights, causing her to drive off the left side of the road and her car hit the tree almost immediately after. Trooper Hoxit believed "she possibly could be impaired" and contacted a drug recognition expert. Trooper Hoxit then drove Defendant in his patrol vehicle to the Graham

County Sheriff's Office.

¶ 6        A drug recognition expert, Trooper Mike McLeod of the North Carolina Highway Patrol, met Defendant and Trooper Hoxit at the Sheriff's office. Defendant appeared to be asleep in the car when they arrived, and when she awoke and walked into the Sheriff's office she shuffled and was unsteady on her feet. After a preliminary examination and conducting multiple sobriety tests, Trooper McLeod ultimately concluded Defendant was under the influence of a central nervous system depressant and narcotic analgesic and her mental and physical faculties were appreciably impaired by these substances. Trooper McLeod based this opinion on the totality of the circumstances, including Defendant's results from a horizontal gaze nystagmus ("HGN") test, which revealed six out of six indicators of impairment, a lack of convergence eye test, which indicated impairment, a walk and turn test, which revealed seven out of eight indicators of impairment, a finger to nose test, which indicated possible impairment, her pupil's reaction to light, which revealed a possible indicator of ingestion of drugs due to her pupil's "very slow" reaction to light, her muscle tone check, which indicated possible ingestion of drugs due to the muscle tone being "flaccid [and] excessively soft," and Defendant's statement regarding her drug

and alcohol consumption.[1]

¶ 7      Defendant told Trooper McLeod that she had taken Citalopram, Ranitidine HCL, Metformin, Tramadol, Gabapentin, and Hydrocodone earlier that day. She also stated she drank a mixed drink, which had one-and-a-half shots of vodka, and two beers that evening, most recently at 9:30 p.m. Further, she stated she took two 10 mg Hydrocodone pills at 9:30 p.m. A blood sample taken at 2:12 a.m. found a blood alcohol concentration of 0.00 grams of alcohol per 100 millimeters, but revealed the presence of Xanax, Citalopram, and Lamotrigine. Over objection, the State's blood analyst confirmed it was possible "that Hydrocodone could have been present in [Defendant's] blood," but that "[she] could not [report its presence] based on a masking effect of Lamotrigine" or it could have been present in "an abundance that is much smaller than what [she could report] or it may have all been metabolized." The jury was only instructed on alcohol, Alprazolam, also known as Xanax, and Hydrocodone as potential impairing substances. Alcohol and Xanax are central nervous system depressants, and Hydrocodone is a narcotic analgesic.

¶ 8      At the conclusion of the State's evidence, Defendant moved to dismiss the

---

[1] Trooper McLeod conducted an HGN test, a vertical gaze nystagmus test, a lack of convergence eye test, a modified Rhomberg balance test, a walk and turn test, a finger to nose test, and checked Defendant's vital signs, pupil size and reaction to light, oral and nasal cavities, and muscle tone.

charges, which the trial court denied. Defendant renewed this motion at the conclusion of all evidence, which was again denied.

Defendant was convicted of all charges and sentenced to 60 to 84 months in prison.[2] She was convicted of felony death by motor vehicle and driving while impaired under the theory of impairment in N.C.G.S. § 20-138.1(a)(1). N.C.G.S. § 20-138.1(a)(1) (2019) ("A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State: (1) While under the influence of an impairing substance"). Defendant timely appeals.

## ANALYSIS

On appeal, Defendant contends the trial court erred in denying her motion to dismiss as there was insufficient evidence of impairment to support her charge of driving while impaired and, in turn, her charge of felony death by motor vehicle. Defendant also argues that she was prejudiced by the trial court's abuse of discretion in admitting speculative expert testimony that Hydrocodone could have been in Defendant's blood. We disagree.

### A. Motion to Dismiss

Defendant argues her motion to dismiss the charges of felony death by motor

---

[2] Defendant was properly sentenced only on the reckless driving charge and the felony death by motor vehicle charge, as driving while impaired is a lesser included offense of felony death by motor vehicle.

vehicle and driving while impaired should have been granted because the evidence of

impairment here was insufficient, as it only raised a suspicion or conjecture that

Defendant was appreciably impaired.

> We review the trial court's denial of [a] [d]efendant's
> motion to dismiss de novo. When ruling on a defendant's
> motion to dismiss, the trial court must determine whether
> the State presented sufficient evidence (1) of each essential
> element of the offense charged, and (2) that the defendant
> is the perpetrator of the offense. To be sufficient, the State
> must present such relevant evidence as a reasonable mind
> might accept as adequate to support a conclusion.
>
> As always, in our review of a ruling on a motion to dismiss,
> we must view the evidence in the light most favorable to
> the State and allow the State every reasonable inference
> that may arise upon the evidence, regardless of whether it
> is circumstantial, direct, or both.

*State v. McDaris*, 852 S.E.2d 403, 406-07 (N.C. Ct. App. 2020) (citations and marks

omitted). "If there is a conflict in the evidence, the resolution of the conflict is for the

jury." *State v. Mason*, 336 N.C. 595, 597, 444 S.E.2d 169, 169 (1994). "A motion to

dismiss should be granted, however, when the facts and circumstances warranted by

the evidence do no more than raise a suspicion of guilt or conjecture since there would

still remain a reasonable doubt as to defendant's guilt." *State v. Simpson*, 235 N.C.

App. 398, 403-04, 763 S.E.2d 1, 5 (2014). It is not the role of our Court to sit in place

of the jury and impose our interpretation of the evidence. *See State v. Moore*, 366

N.C. 100, 108, 726 S.E.2d 168, 174 (2012) ("The jury's role is to weigh evidence, assess

witness credibility, assign probative value to the evidence and testimony, and determine what the evidence proves or fails to prove.").

¶ 12    Here, Defendant's motion to dismiss concerned the charges of felony death by motor vehicle and driving while impaired. "The elements of felony death by [motor] vehicle are: (1) [the] defendant unintentionally causes the death of another; (2) while driving impaired as defined by [N.C.G.S. § 20-138.1(a)(1)] . . . ; and (3) the impairment was the proximate cause of the death." *State v. Davis*, 198 N.C. App. 443, 446-47, 680 S.E.2d 239, 243 (2009) (quoting *State v. Bailey*, 184 N.C. App. 746, 748, 646 S.E.2d 837, 839 (2007)).

¶ 13    In terms of driving while impaired, our statutes read, "[a] person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State . . . [w]hile under the influence of an impairing substance[.]" N.C.G.S. § 20-138.1(a)(1) (2019).

¶ 14    Since Defendant only challenges the impairment element, we only analyze whether there was sufficient evidence of impairment. *See* N.C. App. R. 28(a) (2021) ("The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned.").

> To support a charge of driving while impaired, the State must prove that the defendant has drunk a sufficient quantity of intoxicating beverage or taken a sufficient amount of narcotic drugs, to cause him to lose the normal control of his bodily or mental faculties, or both, to such an

extent that there is an appreciable impairment of either or both of these faculties. However, the State need not show that the defendant was "drunk," *i.e.*, that his or her faculties were materially impaired. The fact that a motorist has been drinking, when considered in connection with faulty driving *or other conduct indicating an impairment of physical and mental faculties*, is sufficient prima facie to show a violation of [N.C.G.S. § 20-138.1]. It follows that evidence of such faulty driving, along with evidence of consumption of both alcohol and cocaine, is likewise sufficient to show a violation of [N.C.G.S. § 20-138.1].

*State v. Norton*, 213 N.C. App. 75, 78-79, 712 S.E.2d 387, 390 (2011) (second emphasis added) (citations, footnote, and marks omitted). Giving the State every reasonable inference from the evidence, there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" that Defendant was impaired. *McDaris*, 852 S.E.2d at 407.

¶ 15    Defendant argues the evidence here "did not lend itself to a reasonable inference that [she] was appreciably impaired, but only raised a suspicion or conjecture of that possibility." Defendant bases this argument on evidence showing: the accident occurred at night on a curvy mountain road; Defendant gave consistent explanations of how the accident happened; Defendant expressed concern for the safety of Ms. Whachacha; Defendant was responsive according to EMTs; was able to walk without help; was overweight, diabetic, and had two bad knees in addition to the car accident, which affected the results of her sobriety tests; and that not all of

the sobriety tests suggested she was intoxicated. However, Defendant relies only on evidence that conflicts with other evidence presented by the State.

¶ 16 Here, the State presented sufficient evidence of impairment to survive Defendant's motion to dismiss. This evidence includes: Defendant's results from several standardized field sobriety tests, including the HGN test, the walk and turn test, the convergence test, and the finger-to-nose test; Defendant's statement to Trooper McLeod that she drank three and half drinks, with her last being only one hour and fifteen minutes before the accident; Defendant's statement to Trooper McLeod that she took 20 mg of Hydrocodone one hour and fifteen minutes before the accident; Defendant, although not suffering a related injury, was unable to stay awake following the accident; Defendant was observed walking with an unsteady gait; Defendant had slurred and strange speech; and Trooper McLeod's opinion that Defendant was impaired as result of both her performance on the sobriety tests and her behavior. This evidence of impairment of Defendant's physical faculties—namely her slurred speech, lethargy, unsteady gait, and failed sobriety tests, in connection with an admission to drinking and taking drugs—is sufficient evidence of impairment under N.C.G.S. § 20-138.1. *See Norton*, 213 N.C. App. at 79, 712 S.E.2d at 390 (emphasis added) ("The fact that a motorist has been drinking, when considered in connection with faulty driving *or other conduct indicating an impairment of physical and mental faculties*, is sufficient prima facie to show a violation of [N.C.G.S. § 20-

138.1].").

¶ 17     Furthermore, we have held that "[t]he opinion of a law enforcement officer . . . has consistently been held sufficient evidence of impairment, provided that it is not solely based on the odor of alcohol." *State v. Mark*, 154 N.C. App. 341, 346, 571 S.E.2d 867, 871 (2002), *aff'd per curiam*, 357 N.C. 242, 580 S.E.2d 693 (2003). In *Mark*, we held "the State presented sufficient evidence that [the] defendant was impaired" based on a law enforcement officer's "[testimony] that he formed an opinion that [the] defendant was appreciably impaired after conducting a field sobriety test." *Id.* "Accordingly, we [found] no merit to [the] defendant's third assignment of error [to the trial court's denial of his motion to dismiss the driving while impaired charge]." *Id.*

¶ 18     Here, Trooper McLeod, a drug recognition expert, testified that he formed an opinion that Defendant was appreciably impaired by a central nervous system depressant or narcotic analgesic based upon a standardized 12-step drug influence evaluation, which included indications of impairment from Defendant's results on multiple field sobriety tests. This evidence was sufficient evidence of Defendant's impairment. *See id.*

¶ 19     Although Defendant points us to conflicting evidence, conflicting evidence does not allow the trial court to grant a motion to dismiss; it is well established that conflicting evidence is for the jury to resolve. *See Mason*, 336 N.C. at 597, 444 S.E.2d

at 169 ("The defendant's only assignment of error is to the overruling of his motion to dismiss for the insufficiency of the evidence. He bases this argument on certain inconsistencies in the evidence and particularly on some evidence that the pistol may have fired accidentally. In determining whether evidence is sufficient to survive a motion to dismiss, the evidence is considered in the light most favorable to the State. If there is a conflict in the evidence, the resolution of the conflict is for the jury."). Defendant's contention that the evidence presented here was only sufficient to create a suspicion of impairment is incorrect, and the conflicting evidence Defendant points to was for the jury to resolve, not us on appeal. The trial court properly denied Defendant's motion to dismiss as there was sufficient evidence of impairment to proceed to a jury, despite conflicting evidence.

## B. Expert Testimony

Defendant argues the trial court should not have allowed the State's expert, Amber Rowland, to testify:

> It is possible that [Hydrocodone] came out [in the blood test] at the same time as Lamotrigine; and, therefore, I could not call it based on a masking effect of Lamotrigine. It can also be an abundance that is much smaller than what we could call or it may have all been metabolized.

Defendant argues this speculative testimony about the presence of Hydrocodone was in violation of Rule 702 "because it was not based on scientific or technical knowledge that could assist the jury in understanding the evidence or deciding a fact in issue.

Moreover, it was impermissibly based on unreliable principles and methods." Further, Defendant argues it was prejudicial to her because "[a]t the heart of this trial was the question of whether [Defendant] was appreciably impaired at the time of the accident" and the expert's testimony regarding Hydrocodone, a drug Defendant claims to be stigmatized,[3] pushed otherwise insufficient and conflicting evidence over the line to convince the jury Defendant was guilty. Specifically, she points to the jury's note asking, "[d]id witness Amber Rowland state in her testimony that Hydrocodone was found in conformatory [sic] or other testing?"

¶ 21    The State contends this issue was not properly preserved because any objection was waived by previous testimony that was not objected to, and Defendant only objected based on relevance and not Rule 702, with any Rule 702 objection not being apparent from the context.

> In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion.

N.C. R. App. P. 10(a)(1) (2021). "Where evidence is admitted over objection and the same evidence has been previously admitted or is later admitted without objection,

---

[3] Defendant raises the stigmatization argument for the first time on appeal.

the benefit of the objection is lost." *State v. Alford*, 339 N.C. 562, 570, 453 S.E.2d 512, 516 (1995). "Even valid objections may be, and are usually waived in [non-capital cases] by failure to follow the recognized practice by motion to strike or by motion to limit if the evidence is not competent." *State v. Beam*, 45 N.C. App. 82, 84, 262 S.E.2d 350, 352 (1980) (quoting *State v. Battle,* 267 N.C. 513, 520-21, 148 S.E.2d 599, 604 (1966)).

¶ 22        Additionally, Rule 702(a) states:

> (a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
>
> (1) The testimony is based upon sufficient facts or data.
>
> (2) The testimony is the product of reliable principles and methods.
>
> (3) The witness has applied the principles and methods reliably to the facts of the case.

N.C.G.S. § 8C-1, Rule 702(a) (2019). Regarding Rule 702, our Supreme Court has stated:

> The trial court [] concludes . . . whether the proffered expert testimony meets Rule 702(a)'s requirements of qualification, relevance, and reliability. This ruling will not be reversed on appeal absent a showing of abuse of discretion. And a trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been

the result of a reasoned decision. The standard of review remains the same whether the trial court has admitted or excluded the testimony—even when the exclusion of expert testimony results in summary judgment and thereby becomes outcome determinative.

*State v. McGrady*, 368 N.C. 880, 893, 787 S.E.2d 1, 11 (2016) (citations and marks omitted).

Assuming, without deciding, that this issue was preserved for appeal and that the admission of Rowland's statement was an abuse of discretion in violation of Rule 702, the statement's admission was not prejudicial given the admission of testimony regarding Defendant's statement to Trooper McLeod that she took 20 mg of Hydrocodone approximately one hour and fifteen minutes before the accident.

Defendant argues this testimony was prejudicial because the evidence that Defendant was impaired was "far from overwhelming," expert testimony is given more weight by the jury, Hydrocodone is a stigmatized drug as a result of the opioid crisis, and the testimony "weighed on the minds of the jurors while they deliberated, as indicated by the jury's note to the trial court during deliberations." However,

> [a] defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.

N.C.G.S. § 15A-1443(a) (2019).

There was not a reasonable possibility that a different result would have been reached if the trial court had excluded the testimony regarding the possible presence of Hydrocodone in Defendant's blood. Although there would not have been expert testimony that Hydrocodone could have been within Defendant's blood, there was testimony from Trooper McLeod that Defendant told him she had ingested 20 mg of Hydrocodone at 9:30 p.m. on the night of the accident.[4] This testimony from Trooper McLeod tended to show Defendant had taken Hydrocodone prior to the accident and may have been impaired by it, in a more convincing way than Rowland's expert testimony did. As a result, any abuse of discretion in admitting Rowland's testimony was not prejudicial.

## CONCLUSION

The trial court did not err in denying Defendant's motion to dismiss the charges of driving while impaired and felony death by motor vehicle, as, despite conflicting evidence, there was sufficient evidence of impairment to go to the jury. Further, even assuming, without deciding, that the trial court abused its discretion in admitting expert testimony regarding the potential presence of Hydrocodone in Defendant's blood test results, Defendant was not prejudiced due to the admission of her statement that she took 20 mg of Hydrocodone approximately one hour and

---

[4] This testimony has not been challenged on appeal.

fifteen minutes before the accident.

NO ERROR.

Judges DILLON and ARROWOOD concur.