An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-813

Filed 6 August 2025

Vance County, Nos. 22CRS051272-900, 22CRS051274-900

STATE OF NORTH CAROLINA

v.

BRANDON OMAR GOODSON

Appeal by defendant from judgments entered 26 October 2023 by Judge Cynthia K. Sturges in Vance County Superior Court. Heard in the Court of Appeals 19 March 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Daniel O'Brien, for the State.*

> *Reece & Reece, by Mary McCullers Reece, for defendant.*

FREEMAN, Judge.

Defendant appeals from judgment entered upon a jury verdict of guilty on the charges of assault with a deadly weapon with intent to kill and possession of a firearm by a felon. On appeal, defendant argues that the trial court "plainly erred, abused its discretion, and prejudiced" him by admitting evidence of a prior act "where the probative value of the evidence was substantially outweighed by the danger of unfair

prejudice[.]" After careful consideration, we conclude defendant received a fair trial free from error.

## I.  Facts and Procedural History

The evidence presented at trial tended to show the following.  Around 2018, Ronnie Hawkins discovered defendant was his half-brother.  Before they learned of their familial relationship, Hawkins had dated Malika Bay.  Hawkins and Bay broke up around January or February 2022 but continued to live together as roommates. Soon after their relationship ended, defendant began dating Bay

Bay and defendant's relationship strained the half-brothers' relationship. Hawkins testified that defendant was "telling Ms. Bay everything [his] other girlfriend was doing" and that defendant had "crossed" him "telling that lady everything[.]"

Hawkins and defendant had a "falling out" when defendant stole five to six thousand dollars' worth of Hawkins' belongings, including equipment Hawkins used for work, from Bay's home.  Hawkins reported his missing items to the police but maintained they did "nothing about it."  Hawkins "tried to fight" defendant, but defendant ran away from him.  Between April and June 2022, Hawkins said he attempted to confront defendant four or five times about his missing equipment and items.

Defendant testified he never took any of Hawkins' belongings from Bay's home

but had "removed properties" Bay asked him to remove. Defendant stated he felt comfortable removing "three truckloads" of these "things" from Bay's home because Hawkins "was never to return[.]" Defendant explained that in April 2022, Bay had a restraining order against Hawkins because Hawkins had punched both Bay and defendant's dog and had followed defendant and Bay on several occasions.

Hawkins testified he encountered defendant in April 2022, when defendant rammed his truck into Hawkins' truck, ran off, and told Hawkins he was going to kill him. In response, Hawkins called the police and took out warrants for defendant's arrest for communicating threats and injury to personal property. When police did not serve these warrants on defendant, Hawkins tried to locate him.

Defendant testified both he and Bay were "trying to avoid" Hawkins and he neither threatened Hawkins nor rammed Hawkins' vehicle in April 2022. Regarding the several times Hawkins had chased after defendant, defendant said that he drove away each time. Defendant stated he was never served with any warrants because he did not commit the alleged acts.

On 23 June 2022, Hawkins was driving when he saw defendant driving with Bay in the passenger seat of defendant's vehicle. Subsequently, Hawkins "got in behind" defendant's vehicle to obtain defendant's license plate number and called 911. While on the phone with police dispatch, Hawkins tried to communicate the license plate of defendant's vehicle so police could act on the warrants Hawkins said he had filed against defendant.

As Hawkins continued to speak with the 911 dispatcher and followed defendant's vehicle, defendant pulled into a nearby parking lot. Then, defendant exited his vehicle and began shooting birdshot at Hawkins with a 12-gauge pump action shotgun. Hawkins testified defendant was aiming for his head, but he "hit the gas and [the shots] hit the back door." Hawkins attempted to chase after defendant, but defendant drove "out of sight." Throughout the encounter, Hawkins remained on the phone with the 911 dispatcher and reported that defendant was shooting at him. This 911 call was later submitted into evidence by the State to corroborate Hawkins' claims and, at trial, Hawkins identified the shotgun which belonged to Bay.

Defendant, however, testified to a different version of events. Defendant testified that the incident on 23 June 2022 was the first time Hawkins had seen defendant and Bay together. However, defendant explained this was "at least" the fifth time Hawkins had followed himself or Bay in two months. According to defendant, Hawkins drove up next to the couple and flashed a gun. Defendant tried to get away from Hawkins by pulling into a church parking lot. Hawkins followed the couple into the parking lot, and "pulled up right beside [them] . . . [then] began to flash his gun. And [Bay] got scared and she shot out the window at him." Defendant said he never exited the vehicle nor shot at defendant. According to defendant, he "pulled off" after Bay shot out the window at Hawkins' vehicle.

Officer William Nutt, a former Henderson police officer, responded to Hawkins' 911 call. When he arrived at the church parking lot, Officer Nutt saw Hawkins

standing outside of his vehicle and observed damage to the front door and fender of Hawkins' vehicle. Officer Nutt testified the damage on the outside of Hawkins' vehicle had "a pattern of what would be akin to birdshot from a shotgun, lots of pellets." Officer Nutt located two 12-gauge shotgun shells at the edge of the parking lot and street.

Henderson police officer Sabrina Hoyle investigated the incident and interviewed Hawkins. At trial, Officer Hoyle testified to defendant and Hawkins' relationship; the events of 23 June 2022; details of incident and accident reports on record regarding the April 2022 event; and Hawkins' version of events. On 22 August 2022, defendant was indicted by a grand jury for assault with a deadly weapon with intent to kill and possession of a firearm by a felon.

Defendant's matter came on for trial on 24 October 2023. Before the beginning of trial, the State gave notice of its intent to submit Rule 404(b) character evidence of Hawkins' testimony regarding the April 2022 incident. Hawkins testified during *voir dire* examination that defendant "took a truck, rammed it into my truck, and then he run off and he told me he was going to kill me. Told me [he] was gonna shoot me."

The State argued Hawkins' testimony was proper and not unduly prejudicial because it demonstrated defendant's motive and intent for the incident in June 2022. The State argued this was foundational evidence, showing the jury "why [Hawkins] is calling 911 on this defendant on the day in question. Why he gets behind him, tries to get his tag number, and calls 911." Defendant objected to Hawkins' testimony and

contended this evidence was inadmissible as evidence of defendant's uncorroborated actions. Further, defendant argued Hawkins' testimony would unduly prejudice the jury against defendant.

The trial court ruled that Hawkins' testimony on the April 2022 encounter was admissible under Rules 404(b) and 403:

> To be considered for motive and intent and I would say just foundational purpose, not prove whether or not . . . this defendant committed the acts alleged to have been committed in [June 2022] . . . . With the 403 balancing, I feel like it is relevant and not so unduly prejudicial, nor would it confuse the jury.

At trial, defendant did not renew his objection to the evidence of the April 2022 incident when the State presented Hawkins' testimony.

During the jury charge, the court gave a limiting instruction to the jury, stating that the evidence of Hawkins' alleged previous encounter with defendant was:

> Received solely for the purpose of showing that the defendant had a motive for the commission of the crime charged in this case; that the defendant had the intent which is a necessary element of the crime felonious assault with a deadly weapon with intent to kill; and to show why Mr. Hawkins called 911 on [23 June 2022]. If you believe this evidence you may consider it, but only for the limited purposes for which it was received. You may not consider it for any other purpose.

On 26 October 2023, the jury found defendant guilty of assault with a deadly weapon with intent to kill and possession of a firearm by a felon. Defendant was sentenced to consecutive sentences of 33–52 months and 17–33 months

imprisonment.  Defendant provided oral notice of appeal at the conclusion of trial.

## II.    Jurisdiction

This Court has jurisdiction to consider defendant's appeal under N.C.G.S. §§ 7A-27(b)(1) (2023) ("From any final judgment of a superior court . . . .") and 15A-1444(a) (2023) ("A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered.").

## III.    Standard of Review

When the trial court makes "findings of fact and conclusions of law to support its 404(b) ruling . . . we look to whether the evidence supports the findings and whether the findings support the conclusions." *State v. Beckelheimer*, 366 N.C. 127, 130 (2012).  Therefore, when reviewing rulings applying Rules 404(b) and 403, "we conduct distinct inquiries with different standards of review." *Id.*  First, "[w]e review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b)." *Id.*  Then, we "review the trial court's Rule 403 determination for abuse of discretion." *Id.*  "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Cagle*, 346 N.C. 497, 506–07 (1997) (citation omitted).

## IV.    Discussion

Defendant asserts the trial court, "plainly erred, abused its discretion, and prejudiced" him by admitting evidence of the April 2022 incident "where the probative

- 7 -

value of the evidence was substantially outweighed by the danger of unfair prejudice[.]"[1] Specifically, defendant asserts that because there was insufficient evidence he committed the prior act, the evidence of the act was not relevant, was minimally probative, and was unfairly prejudicial.

## A. Preservation and Plain Error

Our Rules of Appellate Procedure provide that "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). "Parties therefore must assert a timely objection to preserve error for appellate review. If parties do not timely object, they waive the right to raise the alleged error on appeal." *State v. Lawrence*, 365 N.C. 506, 512 (2012). Indeed, "a trial court's evidentiary ruling on a pretrial motion is *not* sufficient to preserve the issue of admissibility for appeal unless a defendant renews the objection during trial." *State v. Oglesby*, 361 N.C. 550, 554 (2007).

Here, defendant concedes he failed to renew his objection to Hawkins' testimony at trial, and therefore, failed to preserve the issue on appeal. However,

---

[1] Defendant also asks this Court to invoke Rule 2 to review his unpreserved arguments regarding the constitutionality of N.C.G.S. § 14-415.1(a) (2011). "Rule 2 relates to the residual power of our appellate courts to consider, in exceptional circumstances, significant issues of importance in the public interest or to prevent injustice which appears manifest to the Court and only in such instances." *State v. Campbell*, 369 N.C. 599, 602 (2017) (cleaned up). Because defendant has failed to demonstrate the exceptional circumstances necessary to invoke Rule 2, in the exercise of our discretion, we decline to do so.

defendant asks this Court to review the admission of the April 2022 incident under Rules 401, 402, 404(b), and 403 for plain error. *See* N.C.G.S. § 8C-1, Rules 401, 402, 404(b), and 403 (2023).

Plain error review requires a defendant to demonstrate that: (1) "a fundamental error occurred at trial"; (2) "the error had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict"; and (3) "the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Reber*, 386 N.C. 153, 158 (2024) (cleaned up). In other words, plain error review is applied when "unpreserved instructional or evidentiary error" has occurred at trial and "is an extreme remedy and should be used sparingly, only in exceptional circumstances, to reverse criminal convictions on the basis of unpreserved error." *State v. Gillard,* 386 N.C. 797, 820 (2024) (cleaned up).

However, "plain error review is unavailable for issues that fall 'within the realm of the trial court's discretion,' such as Rule 403 determinations." *Id.* at 821 (quoting *State v. Steen*, 352 N.C. 227, 256 (2000)). Since this discretionary decision by the trial court is not subject to plain error review, we decline to review defendant's Rule 403 argument. *See State v. Norton*, 213 N.C. App. 75, 81, 712 S.E.2d 387, 391 (2011) ("Because our Supreme Court has held that discretionary decisions of the trial court are not subject to plain error review, . . . we need not address Norton's argument

on this issue." (cleaned up)).

**B. Rules 401 and 402**

"However, because a trial court's rulings on relevancy are technically not discretionary," we review defendant's challenge under Rule 401 for plain error. *Gillard*, 386 N.C. at 821 (cleaned up). Rules 401 and 402 of our Rules of Evidence govern the relevancy of evidence. N.C.G.S. § 8C-1, Rule 401 and Rule 402 (2023). "Evidence is relevant if it has any logical tendency to prove a fact at issue in a case, and in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible." *State v. Ervin*, 914 S.E.2d 576, 587 (N.C. Ct. App. 2025) (cleaned up); *see also* N.C.G.S. § 8C-1, Rule 401 (2023). Therefore,

> [t]he bar for evidence being relevant is low; evidence is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known, to properly understand their conduct or motives, or if it reasonably allows the jury to draw an inference as to a disputed fact.

*Ervin*, 914 S.E.2d at 587 (cleaned up).

"Evidence which goes to any element of an offense charged is plainly relevant since the State must prove every element of a crime beyond a reasonable doubt before an accused may be convicted." *State v. Richardson*, 385 N.C. 101, 151 (2023) (cleaned up). "Evidence which is not relevant is not admissible." N.C.G.S. § 8C-1, Rule 402 (2023). We review a trial court's relevancy determinations de novo, *Ervin*, 914 S.E.2d

at 584, but give "great deference" to a trial court's relevancy determinations on appeal, *Gillard*, 386 N.C. at 821.

In the present case, Hawkins' testimony was offered for multiple purposes: to provide context as to why Hawkins had sought defendant's license plate number and called 911 on 23 June 2022; to demonstrate defendant's motive; and to demonstrate defendant's intent to kill, which is an essential element of assault with a deadly weapon with intent to kill. *See State v. Riley*, 159 N.C. App. 546, 553–54 (2003). Therefore, Hawkins' testimony was relevant for the State's purposes. *See Ervin*, 914 S.E.2d at 588; *see also Richardson*, 385 N.C. at 151. Accordingly, the trial court did not err by admitting this evidence under Rules 401 and 402.

## C. Rule 404(b)

Rule 404(b) of our Rules of Evidence provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1 (2023).

In other words, Rule 404(b) outlines three requirements for evidence to be admissible: (1) that the prior act has "probative value beyond showing the defendant has the propensity or disposition to commit an offense of the nature of the crime charged"; (2) that the prior act is sufficiently similar "to the charged crime"; and (3)

that the prior act is "temporally proximate to the presently charged act." *State v. Jones*, 288 N.C. App. 175, 181 (2023).

Though Rule 404(b) is a "general rule of inclusion," if the evidence is only probative of whether "the defendant has the propensity or disposition to commit an offense of the nature of the crime charged," then the evidence is not admissible. *State v. Coffey*, 326 N.C. 268, 278–79 (1990) (cleaned up). This Court reviews such determinations de novo, *see Beckelheimer*, 366 N.C. at 130, and other acts may be admissible even if the "defendant was never charged, arrested, or convicted" in connection with this other act, *State v. Adams*, 220 N.C. App. 319, 321 (2012).

However, evidence of other crimes, wrongs, or acts "is relevant only if the jury can conclude by a preponderance of the evidence that the extrinsic act occurred and that the defendant was the actor." *State v. Haskins*, 104 N.C. App. 675, 679 (1991). In other words, before evidence of a prior act is deemed admissible under Rules 404(b), a trial court must initially determine "whether there is sufficient evidence that the defendant in fact committed the extrinsic act." *Id.* at 680. "The judge is not required to be convinced beyond a reasonable doubt, by clear and convincing evidence, or by a preponderance of the evidence, that defendant committed the extrinsic act. Rather, as a prerequisite to admitting the evidence, the trial court must find the evidence to be substantial." *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Williams*, 307 N.C. 452, 454 (1983).

Defendant challenges this initial determination but does not challenge whether the April 2022 incident had "probative value beyond showing the defendant has the propensity or disposition to commit an offense of the nature of the crime charged"; that the prior act is sufficiently similar "to the charged crime"; or that the prior act is "temporally proximate to the presently charged act." *See Jones*, 288 N.C. App. at 181. Put simply, defendant contends the April 2022 incident had little probative value because there was insufficient evidence defendant committed the events of April 2022. Defendant further argues "it was more than possible that the jury found intent to kill based on the prior threat rather than on the evidence regarding the June incident."

Defendant's argument regarding the sufficiency of the evidence is unavailing. At trial, Officer Hoyle's testimony and the 911 audio recordings, along with Hawkins' testimony, demonstrated substantial evidence that Hawkins had taken out warrants against defendant based on the alleged April 2022 incident. This evidence tended to show that: Hawkins and defendant had a tense relationship; Hawkins alleged and reported to law enforcement that defendant had rammed into his truck and threatened him in April 2022; incident and accident reports were created based on the events of April 2022; Hawkins had sought warrants against defendant for communicating threats and injury to personal property; and Hawkins attempted to locate defendant based on these warrants.

Although defendant denies he rammed into Hawkins' truck and threatened to

kill him in April 2022, the evidence, as presented, allows "a reasonable mind" to "accept [the evidence] as adequate to support [the] conclusion" that defendant committed the acts alleged in April 2022. *See Williams*, 307 N.C. at 454. Because Hawkins' testimony, Officer Hoyle's testimony, and the 911 audio recordings adequately supported the conclusion that defendant hit Hawkins' vehicle and threatened him in April 2022, the trial court did not err, much less plainly err, in concluding sufficient evidence tended to show defendant had committed the prior acts.

## V. Conclusion

This Court declines to review defendant's unpreserved Rule 403 argument for plain error because plain error review is unavailable for issues that fall " 'within the realm of the trial court's discretion.' " *Gillard*, 386 N.C. at 821 (quoting *Steen*, 352 N.C. at 256 (2000). In reviewing whether the trial court plainly erred in admitting the Hawkins' testimony regarding the April 2022 incident under Rules 401, 402, and 404(b), we conclude the trial court did not err, let alone plainly err, because the evidence was relevant and probative.

NO ERROR

Judges TYSON and STADING concur.

Report per Rule 30(e).