STATE OF NORTH CAROLINA v. EDWARDO MARTINEZ

No. COA01-308

(Filed 2 April 2002)

**1. Evidence— out-of-court-statements—hearsay—prior inconsistent statement exception**

The trial court did not err in a prosecution for conspiracy to traffic in marijuana by allowing the State to introduce out-of-court statements for impeachment purposes where there was no evidence that the State's primary purpose was to evade the hearsay rule; there was other evidence of conspiracy; the statement was not admitted for substantive purposes; and it would otherwise have been admissible because of the prior inconsistent statement exception to the hearsay rule.

## 2. Evidence— recorded telephone conversation—testimony admissible

There was no plain error in a prosecution for conspiracy to traffick in marijuana in the introduction of the contents of a recorded telephone conversation between defendant and an accomplice. A law enforcement officer testified that he was present when the conversation was taking place and had listened to it several times; the accomplice had given his consent to the recording; the provisions of N.C.G.S. § 8C-1, Rule 901 were complied with; the best evidence rule did not apply because the contents of the conversation were not disputed; defendant did not move to have the tape played for the jury; defendant did not show that the jury probably would have reached a different result if the tape had been played; and the evidence was not unduly prejudicial.

## 3. Evidence— marijuana trafficking—record of customers and amounts due

The trial court did not err in a prosecution for conspiracy to traffic in marijuana by admitting papers found on defendant which contained the names of those who had purchased marijuana and the amounts due. The paper corroborated the testimony of two witnesses and was relevant and admissible as substantive evidence of intent and design.

## 4. Drugs— marijuana—conspiracy to traffic—implied understanding

The trial court did not err by denying motions for nonsuit and appropriate relief from a defendant charged with conspiracy to traffic in marijuana where a man (Treto) who accepted a shipment of marijuana from Federal Express had a history of drug transactions with defendant; defendant did not want to receive the package; Treto knew that part of his marijuana debt to defendant would be forgiven for accepting the package; and Treto knew the package contained marijuana. An express agreement need not be shown if a mutual, implied understanding is shown.

## 5. Drugs— conspiracy to transport—amount—variance between indictment and instruction—no error

There was no plain error in a prosecution for conspiracy to traffic in marijuana where defendant was indicted for transporting thirty-five pounds and the instruction was for transporting more than ten but less than fifty pounds. Defendant did not

STATE v. MARTINEZ

[149 N.C. App. 553 (2002)]

object at trial, did not claim any difficulty in preparing for trial, and there is no possibility that he was confused about the offense charged.

Appeal by defendant from judgment entered 30 August 2000 by Judge Jay D. Hockenbury in Pender County Superior Court. Heard in the Court of Appeals 30 January 2002.

*Roy Cooper, Attorney General, by David R. Minges, Assistant Attorney General, for the State.*

*Hosford & Hosford, PLLC, by Geoffrey W. Hosford for defendant-appellant.*

THOMAS, Judge.

Defendant, Edwardo Martinez, appeals a jury verdict finding him guilty of conspiracy to commit the felony of trafficking in marijuana where the quantity is in excess of ten pounds but less than fifty pounds. Among defendant's five assignments of error is that the trial court erred by allowing the State to introduce out-of-court statements to impeach the testimony of a co-defendant.

For the reasons discussed herein, we find no error.

The State's evidence tended to show the following: On 18 August 1999, Burgaw Police Detective Keith Hinkle (Hinkle) spoke with Agent Robert Zapetta (Zapetta) of the Combined Governmental Drug Enforcement and Crime Task Force. Zapetta, who was in Texas, advised Hinkle that a package containing a controlled substance was being delivered by overnight mail to Burgaw from Texas. He also provided Hinkle with the package's tracking number. Hinkle went to the Federal Express office in Wilmington the next day and matched the tracking number to a large cardboard box, addressed to "Eric Coob" at 508 Smith Street, Burgaw, North Carolina.

Hinkle and Agent Blane Hicks (Hicks) of the State Bureau of Investigation (SBI) utilized the Wilmington Police Canine Unit to check six boxes. After one of the dogs "alerted on" the box to Coob, Hinkle returned to Burgaw and obtained a search warrant. Upon opening the box, he discovered shipping material, a strong aroma of coffee grounds, and two cellophane-wrapped packages of marijuana. The marijuana collectively weighed approximately thirty-five pounds.

SBI Agent Audria Bridges (Bridges), wearing a Federal Express uniform, then delivered the box to the address listed. Fabian Treto (Treto) signed for it. The name "Eric Coob" was fictitious. Afterwards, the Pender County Sheriff's Department executed a search warrant at the residence.

Treto was arrested for, *inter alia*, conspiring to traffic marijuana. After being advised of his *Miranda* rights, Treto told police that he owed defendant money for previous marijuana purchases. According to Treto, defendant had asked that he accept the package for him as a way of making payment. Treto agreed. Following their interrogation of Treto, the police listened to and recorded a telephone conversation between him and defendant. During the call, Treto informed defendant the package had arrived and defendant acknowledged it contained marijuana.

Later the same day, Hicks arrested defendant at his place of work. Defendant waived his *Miranda* rights and admitted asking Treto to accept the package of marijuana for him. However, defendant also told police he arranged the drop off at Treto's house at the behest of a man named "Puya" who was to pay him $1,200. The police were never able to locate "Puya."

During a search of defendant, police found a list of names with dollar amounts beside them. Defendant explained that the amounts were how much he was owed for marijuana that he had sold to the individuals.

The defense presented no evidence during the guilt/innocence phase and moved to dismiss based on insufficiency of the evidence. The motion, however, was denied.

Defendant was found guilty of conspiracy to commit the felony of trafficking in marijuana where the quantity is in excess of ten pounds but less than fifty pounds. N.C. Gen. Stat. § 90-95(h)(1)(a) (1999). He was sentenced to a minimum of twenty-five months and a maximum of thirty months in prison.

[1] By defendant's first assignment of error, he argues the trial court erred in allowing the State to introduce out-of-court statements to impeach Treto, a co-defendant. We disagree.

During the State's evidence, Treto said he did not know what was in the package. Subsequently, SBI Agent Steve Zawistowski

(Zawistowski) testified that Treto did know what the package contained.

A: Treto stated that Lalo, who is Eduardo Martinez, requested him to take delivery of a package of marijuana.

Q: He didn't tell you to take the package of coffee?

A: No. He knew what was in the package.

Q. Or a package of oregano?

A. No, sir.

Q: Did Mr. Treto ever indicate to you that he didn't know what was in that package?

A: No sir.

Q: Did you have to open that package for him and surprise him and let him know that he had $84,000 worth of marijuana in his living room?

MR. HARRELL: Objection as to whether he was surprised.

MR. DAVID: I think that's relevant, Your Honor.

THE COURT: Overruled.

Q: You may answer, sir. Was Fabian Treto ever surprised to learn he had marijuana in his presence in that box?

A: I don't think we ever showed him the marijuana at all, and all our discussions was [sic] about marijuana. He already knew what was in that package.

Defendant contends the State's questioning of whether Treto knew there was marijuana in the box was a "mere subterfuge" to get otherwise inadmissible evidence before the jury to prove conspiracy, citing *State v. Hunt*, 324 N.C. 343, 378 S.E.2d 754 (1989), *recon. denied*, 339 N.C. 741, 457 S.E.2d 304 (1995), *cert. denied*, 531 U.S. 945, 148 L. Ed. 2d 276 (2000).

*Hunt* states that a prosecutor may not use a witness's statement under the guise of impeachment for the *primary* purpose of placing before the jury substantive evidence which is not otherwise admissible. *See Whitehurst v. Wright*, 592 F.2d 834, 839-40 (5th Cir. 1979); *United States v. Dobbs*, 448 F.2d 1262 (5th Cir. 1971). In *Hunt*, the statements were admitted for both substantive and impeachment

purposes. "[S]uch a scheme merely serves as a subterfuge to avoid the hearsay rule." *United States v. Hogan*, 763 F.2d 697, *withdrawn in part on other grounds*, 771 F.2d 82 (5th Cir. 1985).

> The danger in this procedure is obvious. The jury will hear the impeachment evidence, which is not otherwise admissible and is not substantive proof of guilt, but is likely to be received as such proof. The defendant thus risks being convicted on the basis of hearsay evidence that should bear only on a witness's credibility.

*Id.* Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. R. Evid. 801. "Hearsay is not admissible except as provided by statute or by these rules." N.C. R. Evid. 802.

A prior inconsistent statement is admissible to contradict a witness's testimony, although it may not be considered as substantive evidence. *State v. Green*, 296 N.C. 183, 250 S.E.2d 197 (1978). A statement constitutes substantive evidence when it is "adduced for the purpose of proving a fact in issue[.]" *Black's Law Dictionary* 1429 (6th ed. 1990). A statement is impeachment evidence when it is "given for the purpose of discrediting a witness[.]" *Id.* Here, immediately before Zawistowski's testimony, the trial court gave a limiting instruction to the jury regarding the earlier statement.

> THE COURT: I'm going to give the jury an instruction—give me a moment here—on this kind of testimony. Let's see here. All right, ladies and gentlemen of the jury, listen to this instruction. When evidence has been received tending to show that, at an earlier time, a witness made a statement which may be consistent with or may conflict with his testimony at this trial, you must not consider such earlier statement as evidence of the truth of what was said at that earlier time because it was not made under oath at this trial.

> If you believe such earlier statement was made and it is consistent or does conflict with the testimony of the witness at this trial, then you may consider this, together with all other facts and circumstances bearing upon the witness' truthfulness, in deciding whether you will believe to disbelieve his testimony at this trial.

There is *no* evidence that the State's primary purpose in eliciting the testimony from Zawistowski was to evade the hearsay rule. Further, there was other evidence of the conspiracy elsewhere, including defendant's statement to the police and Treto's testimony. In accordance with the trial court's instruction, the statement was not admitted for substantive purposes and would have otherwise been admissible because of the prior inconsistent statement exception to the hearsay rule. We therefore reject defendant's argument.

[2] By defendant's second assignment of error, he argues the trial court committed plain error in allowing the State to introduce the contents of the recorded telephone conversation between defendant and Treto. We disagree.

Defendant contends he deserves a new trial under this assignment because: (1) the tape was not authenticated; (2) the State did not follow the factors set out in *State v. Lynch*, 279 N.C. 1, 181 S.E.2d 561 (1971), to determine whether the tape was admissible; (3) Zawistowski's summarization of the tape violated the best evidence rule; and (4) the tape was irrelevant.

Plain error is "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (footnote omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)).

First, the proponent of an audiotape must authenticate it by showing that it is what the proponent claims. N.C. R. Evid. 901(a). In *State v. Stager*, 329 N.C. 278, 406 S.E.2d 876 (1991), our Supreme Court held that testimony as to the accuracy of a tape recording based on personal knowledge is sufficient to authenticate because the recording was legal and contained competent evidence. Here, Zawistowski testified that he was present when the conversation was taking place and that he had listened to it several times since the original recording. He further testified that in order to legally record a conversation in North Carolina, the police need the consent of one of the parties. Treto, according to Zawistowski, gave consent.

As to defendant's second argument under this assignment of error, *State v. Lynch*, *supra*, was superceded and the seven-factor test was replaced by Rule 901 of the North Carolina Rules of Evidence. *State v. Stager*, 329 N.C. 278, 406 S.E.2d 876 (1991). Rule 901 provides, in pertinent part:

(a) General provision.—The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

. . . .

(6) Telephone Conversations.—Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (A) in the case of a person, circumstances, including self-identification, show the person answering to be the one called, or (B) in the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone.

N.C. R. Evid. 901(a)(6). Those provisions were complied with here.

As to defendant's third argument under this assignment of error, the best evidence rule applies when the contents of a writing or recording are at issue. See N.C. R. Evid. 1002. Here, the contents of the recorded conversation are not being disputed by defendant and, in fact, Zawistowski actually listened to the original conversation. He was competent to testify from that alone. Additionally, defendant never moved at any time to have the tape played for the jury. When determining plain error, a defendant must show that but for the alleged error, the jury would have returned a different verdict. *State v. Sierra*, 335 N.C. 753, 440 S.E.2d 791 (1994). In light of the overwhelming evidence against defendant, as well as defendant's own admission, we hold that defendant has not shown that if the tape had been played, the jury probably would have reached a different verdict.

As to his final argument under this assignment of error, relevancy is governed by Rules 402 and 403 of the North Carolina Rules of Evidence. Rule 402 states "[a]ll relevant evidence is admissible . . . . Evidence which is not relevant is not admissible." N.C. R. Evid. 402. Rule 403 provides, in pertinent part, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" N.C. R. Evid. 403. Nonetheless, we hold that the evidence was not unduly prejudicial. We therefore find no plain error in the admission of the tape and reject defendant's argument.

**[3]** By defendant's third assignment of error, he argues the trial court erred in allowing the State to introduce into evidence the papers found on him which contained the names of those who had purchased marijuana and the amounts due. We disagree.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. R. Evid. 401. In the instant case, one of the names on a document was that of Treto, the State's primary witness. That paper corroborated the testimony of Hicks, who arrested defendant, as well as the testimony of Treto, and showed a relationship between Treto and defendant. It was therefore relevant and admissible as substantive evidence to show defendant's intent and design. *See* N.C. R. Evid. 401. *See generally, State v. Kilgore,* 65 N.C. App. 331, 308 S.E.2d 876 (1983). We accordingly reject defendant's argument.

**[4]** By defendant's fourth assignment of error, he argues the trial court erred in denying his motions for nonsuit and appropriate relief. We disagree.

In *State v. Pallas,* 144 N.C. App. 277, 548 S.E.2d 773 (2001), this Court held that:

> [a] motion for nonsuit in a criminal case requires consideration of the evidence in the light most favorable to the State, and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. [citation omitted]. Contradictions and discrepancies are for the jury to resolve and do not warrant nonsuit. "If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that defendant committed it, a case for the jury is made and nonsuit should be denied."

*Id.* at 286, 548 S.E.2d at 780 (quoting *State v. McKinney,* 288 N.C. 113, 117, 215 S.E.2d 578, 581-82 (1975)).

In the instant case, it was shown that defendant and Treto were conspiring to commit the offense charged. There was evidence that: (1) Treto had a history of drug transactions with defendant; (2) defendant did not want to receive the package; (3) Treto accepted the package, addressed to "Eric Coob" at his home; (4) Treto knew that part of his $1,400 marijuana debt to defendant would be forgiven for

accepting the package; and (5) Treto knew the package contained marijuana.

A criminal conspiracy can be shown by direct or circumstantial evidence. *State v. Rozier*, 69 N.C. App. 38, 316 S.E.2d 893, *cert. denied*, 312 N.C. 88, 321 S.E.2d 907 (1984). An express agreement need not be shown if a mutual, implied understanding is evident. *Id.* We hold that the trial court did not abuse its discretion when it denied defendant's motion for nonsuit and appropriate relief because the State presented substantial evidence that defendant committed conspiracy to transport more than ten but less than fifty pounds of marijuana. Therefore, this assignment of error is rejected.

**[5]** By defendant's fifth and final assignment of error, he argues the trial court committed plain error by instructing the jury on the offense of conspiracy to commit trafficking by transporting more than ten but less than fifty pounds of marijuana when the grand jury had issued an indictment for conspiracy to commit trafficking by transporting thirty-five pounds of marijuana. We disagree.

Defendant failed to object to the instruction at trial so we analyze this issue under plain error. As aforementioned, plain error is "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (footnote omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)).

In *State v. Epps*, 95 N.C. App. 173, 381 S.E.2d 879 (1989), the defendant was indicted for trafficking 35.1 grams of cocaine. This Court held that the indictment was sufficient although the statutory offense provides a range of more than 28 but less than 200 grams of cocaine.

> It is not the function of the indictment to bind the hands of the State with technical rules of pleading; rather its purposes are to identify clearly the crime[,] . . . [put] the accused on reasonable notice . . . and to protect the accused from being jeopardized by the State more than once for the same offense.

*Id.* at 176, 381 S.E.2d at 881 (quoting *State v. Sturdivant*, 304 N.C. 293, 311, 283 S.E.2d 719, 731 (1981)). Likewise, in the instant case, defendant was put on reasonable notice. He does not claim any difficulty in preparing for trial and there is no possibility that he was con-

fused about the offense charged. Accordingly, we reject defendant's argument and find no error.

NO ERROR.

Judges WYNN and HUDSON concur.