IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-572

Filed 02 May 2023

Edgecombe County, Nos. 15 CRS 51648, 16 CRS 1305

STATE OF NORTH CAROLINA

v.

STEPHEN MICHAEL CANNON

Appeal by Defendant from judgment entered 12 November 2021 by Judge L. Lamont Wiggins in Edgecombe County Superior Court. Heard in the Court of Appeals 8 February 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General John W. Congleton, for the State.*

*J. Clark Fischer, for Defendant.*

WOOD, Judge.

Stephen Cannon ("Defendant") appeals from the trial court's denial of his motion to suppress the evidence of results of a warrantless blood draw and the denial of his motion to dismiss for insufficient evidence. For the reasons stated below, we affirm the trial court.

## I. Factual and Procedural Background

On 14 June 2015, Defendant and Mr. Hardee ("Hardee") were at Defendant's father's shop so Defendant could make repairs to his truck and, during this time, visited with a neighbor, Mr. Peaden ("Peaden"). According to Peaden, he spoke with

Defendant for thirty or forty-five minutes, during which time both Defendant and Hardee each drank a single beer, and Defendant acted "completely normal" during this interaction. After giving Defendant twenty dollars to buy more beer, Defendant and Hardee drove in Defendant's truck to a Wal-Mart in Tarboro.

After leaving Wal-Mart and entering the public roadway, Defendant drove his truck across the center line into the opposite lane of travel and hit an SUV driven by Gina Marie Merchant ("Merchant"). Merchant's daughter was a passenger in the SUV. The collision was nearly head on, with the front left of Defendant's vehicle striking the front right of Merchant's vehicle. Merchant was pronounced dead at the scene of the collision.

Lieutenant Rickie Dozier of the Tarboro Police Department ("Lt. Dozier") responded to the scene of the collision. When he asked Defendant what happened to cause the crash, Defendant alternatively told Lt. Dozier that the accident occurred because something broke underneath the vehicle and because the tire blew out. While at the scene of the fatal accident, Defendant told his passenger he was concerned about his truck and twice-told Lt. Dozier, "Damn, I loved that truck." At one point, Defendant attempted to leave the scene. Lt. Dozier asked Defendant where he was going, and Defendant stated that he was going to Falkland. Lt. Dozier told Defendant that he was not free to leave the scene of the accident.

At 7:21 p.m., Officer Pocoroba of the Tarboro Police Department ("Officer Pocoroba") responded to the car accident. Upon arrival at the scene and after

determining that Defendant was one of the drivers involved in the accident, Officer Pocoroba began interviewing him. During their interaction, Officer Pocoroba observed there was an odor of alcohol on Defendant's breath, his speech was slurred, and his eyes appeared glassy. Defendant's vehicle contained beer cans and an aerosol can of "Ultra Duster."

When Officer Pocoroba asked Defendant what happened to cause the crash, Defendant responded that he believed something broke under the truck. Defendant also informed Officer Pocoroba that he was extremely concerned about the damage to his truck, and Officer Pocoroba observed Defendant appeared to be disconnected from the severity of the accident and Merchant's fatality. Defendant initially told Officer Pocoroba he had not consumed any alcohol that day, but later admitted he had, in fact, consumed alcohol that day.

Based on his observations and interaction with Defendant, Officer Pocoroba conducted a portable field breathalyzer test, with Defendant's test result returning as a 0.03. Officer Pocoroba believed Defendant was under the influence of some impairing substance other than solely alcohol, though he wasn't "sure if it was pills or if it was inhalants." Officer Pocoroba placed Defendant under arrest "on suspicion of misdemeanor driving while impaired and Felony Death by Vehicle" and transported him to the Vidant Emergency Department, approximately five miles from the accident scene. At the hospital, Officer Pocoroba obtained a blood draw kit from nursing staff, read the kit rights form to him, and asked Defendant for consent

for the blood draw. However, Officer Pocoroba neither read Defendant his Chapter 20 implied consent rights nor obtained a search warrant before conducting the blood draw. The blood draw occurred at 9:10 p.m.

On 17 June 2015, an arrest warrant was issued, charging Defendant with aggravated serious injury by vehicle. On 11 April 2016, the Edgecombe County Grand Jury returned a true bill of indictment for the original charge of aggravated serious injury by vehicle in addition to a charge of second-degree murder. On 12 December 2019, Defendant filed a motion to suppress evidence obtained during the 14 June 2015 blood draw. Following a hearing on the motion to suppress, the trial court entered a written order denying Defendant's motion to suppress on 26 October 2020.

The case was called for jury trial on 8 November 2021. Several witnesses testified during the trial. Serving as Defendant's witness, Hardee testified that he was a passenger in Defendant's vehicle at the time of the collision and that prior to the accident, he felt the truck jerk to the right and observed Defendant leaning down in the floorboard of his truck when the truck veered into the oncoming lane of traffic. According to Hardee, Defendant did not drink any alcohol or use any sort of drug during the five hours the two had been together before the wreck.

Both Lt. Dozier and Officer Pocoroba testified about their observations and interactions with Defendant. Additionally, Chief Officer Jordan of the Lake Royale Police Department ("Officer Jordan") testified that on the date of the collision, he was

a police officer with the Tarboro Police Department and interacted with the Defendant at the accident scene. Officer Jordan observed that Defendant's speech was slow, slurred, and hard to understand. A Suboxone strip was located among Defendant's possessions. Officer Jordan testified that during a custodial interview, Defendant stated he had been drinking earlier on the day of the collision and had taken a prescribed anti-seizure medication that his doctor had advised against him taking prior to driving or operating machinery for the first six months.

Dr. Rinson Weathers, ("Dr. Weathers") testifying as an expert in emergency medicine and pharmacology, described examining Defendant at the Vidant Emergency Room. As part of Defendant's treatment, Dr. Weathers ordered a urinalysis screen of Defendant's urine. According to the urinalysis, Defendant's urine contained benzodiazepines, which are a class of sedative drugs typically found in such drugs as Valium and Ativan, as well as cocaine. Dr. Weathers testified that the presence of these drugs could have played a role in whether a person was alert or aware of their environment. Dr. Weathers further stated she advises patients they should not drive or operate dangerous machinery while taking benzodiazepine and that they should not be taken with alcohol or other drugs.

Amber Rowland, an analyst in the Toxicology Section of the North Carolina State Crime Lab, testified as an expert in forensic science and forensic toxicology. Her testing of Defendant's blood sample gave positive results for the presence of Diazepam, a benzodiazepine, and benzyl ethylene, a cocaine metabolite. The testing

also found the presence of Citalopram and Sertraline, which are anti-depressants. The State Crime Lab considers all five of these substances to be impairing substances. Ms. Rowland testified that Defendant's blood alcohol level was 0.02 and the presence of difluoroethane, an aerosol propellant, was detected in his blood. She further testified that it could cause dizziness and possible loss of consciousness.

After hearing the testimony of witnesses and the evidence presented, the jury returned verdicts of guilty for both offenses on 12 November 2021. The trial court sentenced Defendant to active sentences of 180-228 months' imprisonment for second-degree murder and 29-47 months' imprisonment for aggravated serious injury by vehicle to run consecutively. The trial court arrested judgment on the lesser included charges of driving while impaired and felony death by motor vehicle. Defendant gave notice of appeal in open court on 12 November 2021.

## II. Discussion

### A. Defendant's Motion to Suppress

On appeal, Defendant argues that the trial court erred in denying his motion to suppress because no exigent circumstances existed which prevented police from properly obtaining a search warrant before drawing his blood. We disagree.

In evaluating the denial of a motion to suppress, the appellate court determines "whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d. 874, 878 (2011) (citation omitted). Conclusions of law

are reviewed *de novo.* *Id.* (citations omitted). The trial court's findings of fact on a motion to suppress which are supported by evidence in the record are binding on the appellate courts. *State v. Fincher*, 309 N.C. 1, 9, 305 S.E.2d 685, 691 (1983). While Defendant argues in his brief "the trial court erred in finding that exigent circumstances existed" the State points to the fact that Defendant "does not challenge the trial court's findings of fact, which are supported by the evidence presented at the suppression hearing and [therefore] are binding on appeal." We agree.

Because Defendant does not contest any specific findings of fact in the order, the findings "are presumed to be supported by competent evidence and are binding on appeal." *State v. Baker*, 312 N.C. 34, 37, S.E.2d 670, 673 (1984) (citation omitted). We also agree that "the trial court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

Upon review of the record and transcript, we note that Defendant's trial counsel objected to the admittance into evidence of one lab result of the blood test, testing for volatiles and alcohol, but did not object to the admittance of the lab report on the drug analysis on the blood. It is well settled, that "a trial court's evidentiary ruling on a pretrial motion [to suppress] is *not* sufficient to preserve the issue of admissibility for appeal unless a defendant renews the objection during trial." *State v. Oglesby*, 361 N.C. 550, 554, 648 S.E.2d 819, 821 (2007) (citations omitted). Therefore, Defendant's arguments pertaining to Exhibit 63 are overruled.

In its order denying Defendant's motion to suppress, the trial court

determined:

> 8. Officer Pocoroba placed the defendant under arrest and took him to the Vidant Emergency Department for a blood draw. The defendant's blood was taken at 9:10 pm. This was about an hour and forty-nine minutes after the accident.
>
> 9. It would have taken Officer Pocoroba over an hour to get a search warrant for the defendant's blood.
>
> 10. The defendant did not properly consent to a blood draw and his blood was taken without a search warrant.
>
> 11. Exigent circumstances existed which contributed to the need to take the defendant's blood without a search warrant. The exigent circumstances included:
>
> a.) The time involved investigating the accident.
>
> b.) The time it took to drive the defendant to the hospital.
>
> c.) The high volume of traffic throughout the Tarboro Police Department, including a shift change, contributing to the lack of assistance or help to Officer Pocoroba.
>
> d.) The extra time it would have taken Officer Pocoroba to prepare a search warrant, drive and submit [it] to the magistrate would have caused further delay.

Thus, the trial court concluded as a matter of law that, "given the exigent circumstances of the possible dissipation of some impairing substance present in the defendant's blood combined with the exigent circumstances outlined above justified the search of defendant's blood without a warrant."

The Fourth Amendment to the United States Constitution and Article I of the North Carolina Constitution protect the rights of people to be secure from

unreasonable searches and seizures.  U.S. Const. amend. IV; N.C. Const. art. I, § 20.

Our courts have held that drawing blood from a person constitutes a search under

both the Federal and North Carolina Constitutions.  *Schmerber v. California*, 384

U.S. 757, 767, 86 S. Ct. 1826, 1834, 16 L. Ed. 2d 908, 918 (1966); *State v. Carter*, 322

N.C. 709, 722-23, 370 S.E.2d 553, 561 (1988).  A warrantless search of a person is *per*

*se* unreasonable unless it falls within a recognized exception to the warrant

requirement.  *Missouri v. McNeely,* 569 U.S. 141, 147, 133 S. Ct. 1552, 1558, 185 L.

Ed. 2d 696, 703-04 (2013).

One of these exceptions is "when the exigencies of the situation make the needs

of law enforcement so compelling that a warrantless search is objectively reasonable

under the Fourth Amendment."  *State v. Romano*, 369 N.C. 678, 681, 800 S.E.2d 644,

647 (2017) (citation omitted).   The United States Supreme Court has further

recognized that in certain circumstances,

> law enforcement officers may conduct a search without a
> warrant to prevent the imminent destruction of evidence.
> *See Cupp v. Murphy*, 412 U.S. 291, 296 (1973); *Ker v.*
> *California*, 374 U.S. 23, 40-41 (1963) (plurality opinion).
> While these contexts do not necessarily involve equivalent
> dangers, in each a warrantless search is potentially
> reasonable because 'there is compelling need for official
> action and no time to secure a warrant.' *Tyler*, 436 U.S., at
> 509.

*McNeely*, 569 U.S. at 149, 133 S. Ct. at 1559, 185 L. Ed. 2d at 705.  Thus, a court

"looks to the totality of circumstances" to determine whether exigent circumstances

justified law enforcement in acting without a warrant.  *Romano*, 369 N.C. at 681, 800

S.E.2d at 647 (citation omitted).

Here, the record indicates that the investigation of the scene of the collision took significant time, as Defendant was transported to the hospital one hour and forty-five minutes after officers responded and arrived on scene. *See State v. Granger*, 235 N.C. App. 157, 165, 761 S.E.2d 923, 928 (2014) (the totality of the circumstances showed that exigent circumstances justified the warrantless blood draw based upon the trial court finding that the officer "had concerns regarding the dissipation of alcohol from [d]efendant's blood, as it had been over an hour since the accident when [the officer] established sufficient probable cause to make his request for [d]efendant's blood.")

Further, testimony from Officer Pocoroba and Lt. Dozier indicated that they observed Defendant's glassy eyes, slurred speech, general disconnect, and lack of concern over the fatal accident. Officer Pocoroba also detected an odor of alcohol on Defendant's breath and observed beer cans and aerosol cans located on the roadway and in Defendant's truck, thus prompting Officer Pocoroba to give Defendant a portable breath test, which tested positive for the presence of alcohol. Officer Pocoroba suspected that other substances were involved such as pills or inhalants to account for Defendant's appeared impairment. While it is "recognized that alcohol and other drugs are eliminated from the blood stream in a constant rate, creating an exigency with regard to obtaining samples[,]" *State v. Fletcher*, 202 N.C. App. 107, 111, 688 S.E.2d 94, 97 (2010) (cleaned up) (citation omitted), the United States

Supreme Court has held, that the natural dissipation of alcohol in the bloodstream cannot, standing alone, create an exigency in a case of alleged impaired driving sufficient to justify conducting a blood test without a warrant. *McNeely*, 569 U.S. at 156, 133 S. Ct. at 1563, 185 L. Ed. 2d at 709.

However, "exigent circumstances justifying a warrantless blood sample may arise in the regular course of law enforcement due to delays from the warrant application process." *Granger*, 235 N.C. App. at 164, 761 S.E.2d at 928 (citation omitted). The totality of circumstances indicate that further delays existed which affected Officer Pocoroba's ability to secure a warrant. At the motion to suppress hearing, Officer Pocoroba testified that at the time relevant to this case, there was a shift change that would interfere with his ability to obtain a search warrant as there was a lack of assistance or help available to the Officer in filling out and obtaining the warrant or helping to maintain custody of Defendant. Officer Pocoroba testified that due to the call volume in Tarboro, going to the magistrate's office would have added significant time to the process and he estimated obtaining a warrant would have added at least another hour to the process. Based upon our holding in *Granger,* which upheld a finding of exigent circumstances where the Officer's "knowledge of the approximate probable wait time" and "time needed to travel" exceeded forty minutes round trip, we hold under the facts of the present case, the trial court correctly found the existence of exigent circumstances sufficient to justify Defendant's warrantless blood draw. *Id.*, 235 N.C. App. at 165, 761 S.E.2d at 928 (citation

omitted). Therefore, we affirm the trial court's denial of Defendant's motion to suppress.

## B. Defendant's Motion to Dismiss

Next, Defendant argues that the trial court erred by denying his motion to dismiss when the State's evidence did not establish sufficient evidence that he "was impaired at the time of the fatal accident." We disagree.

The standard of review on a motion to dismiss for insufficient evidence is whether the State has offered substantial evidence of each required element of the offense charged, and that defendant was the perpetrator of the offense. *State v. Carr*, 122 N.C. App. 369, 371-72, 470 S.E.2d 70, 72 (1996). "Substantial evidence is that relevant evidence which a reasonable mind would find sufficient to support a conclusion." *Id.* at 372, 470 S.E.2d at 72. All evidence, whether direct or circumstantial, must be viewed "in the light most favorable to the State, and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom" when deciding a motion to dismiss for insufficient evidence. *State v. Martinez*, 149 N.C. App. 553, 561, 561 S.E.2d 528, 533 (2002). "The trial court need only satisfy itself that the evidence is sufficient to take the case to the jury" and "[i]f there is any evidence tending to prove guilt or which reasonably leads to this conclusion as a fairly logical and legitimate deduction, it is for the jury to say whether it is convinced beyond a reasonable doubt of defendant's guilt." *State v. Franklin*, 327 N.C. 162, 171-72, 393 S.E.2d 781, 787 (1990) (citations omitted). Additionally, any

alleged contradictions or credibility issues are for the jury to resolve. *State v. Smith*,

300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980) (citations omitted).

Pursuant to N.C. Gen. Stat. § 20-141.4, an individual commits the offense of

aggravated felony serious injury by vehicle if:

> (1) The person unintentionally causes serious injury to
> another person, (2) The person was engaged in the offense
> of impaired driving under G.S. 20-138.1 or G.S. 20-138.2,
> (3) The commission of the offense in subdivision (2) of this
> subsection is the proximate cause of the serious injury, and
> (4) The person has a previous conviction involving impaired
> driving, as defined in G.S. 20-4.01(24a), within seven years
> of the date of the offense.

N.C. Gen. Stat. § 20-141.4(a4) (2021). N.C. Gen. Stat. § 20-138.1 further provides

that an individual commits the offense of impaired driving if he drives any vehicle

upon any highway, any street, or any public vehicular area:

> (1) While under the influence of an impairing substance; or
> (2) After having consumed sufficient alcohol that he has, at
> any relevant time after driving, an alcohol concentration of
> 0.08 or more. The results of a chemical analysis shall be
> deemed sufficient evidence to prove a person's alcohol
> concentration; or (3) With any amount of a Schedule I
> controlled substance, as listed in N.C.G.S. § 90-89, or its
> metabolites in his blood or urine.

N.C. Gen. Stat. § 20-138.1(a) (2021). An impairing substance is defined as "[a]lcohol,

[a] controlled substance under Chapter 90 of the General Statutes, any other drug or

psychoactive substance capable of impairing a person's physical or mental faculties,

or any combination of these substances." N.C. Gen. Stat. § 20-4.01(14a) (2021).

Hence, a person is under the influence of an impairing substance if "his physical or

mental faculties, or both, [are] appreciably impaired by an impairing substance." N.C. Gen. Stat. § 20-4.01(48b).

Thus, to determine whether a person has committed the offense of impaired driving under N.C. Gen. Stat. § 20-138.1, the State must prove "that defendant had ingested a sufficient quantity of an impairing substance to cause his faculties to be appreciably impaired." *State v. Fincher*, 259 N.C. App. 159, 162, 814 S.E.2d 606, 76 (2018) (citation omitted). Additionally, the fact that a "motorist has been drinking, when considered in connection with faulty driving or other conduct indicating an impairment of physical and mental faculties, is sufficient *prima facie* to show a violation" of N.C. Gen. Stat. § 20-138.1. *State v. Coffey*, 189 N.C. App. 382, 387, 658 S.E.2d 73, 76 (2008) (cleaned up). "It follows that evidence of such faulty driving, along with evidence of consumption of *both* alcohol *and cocaine*, is likewise sufficient to show a violation of section 20-138.1." *State v. Norton*, 213 N.C. App. 75, 79, 712 S.E.2d 387, 390 (2011).

In the present case, the evidence, viewed in the light most favorable to the State, was sufficient to prove that Defendant was appreciably impaired at the time of the collision. Hardee, the passenger in Defendant's truck, testified that he and Defendant had gone to Tarboro to buy some beer and were returning when the accident occurred. Further, Hardee testified that at some point after he had informed Defendant that a woman was killed in the collision, Defendant responded that he was concerned about his truck. Officer Jordan provided testimony that he observed beer

cans at the scene of the accident and an aerosol can of "Ultra Duster" in Defendant's vehicle. Officer Jordan also reported that Defendant's speech was slow, slurred, and hard to understand during their interaction. Officer Jordan further testified that Defendant later shared with him that he drank earlier on the day of the collision and that he was also taking an anti-seizure medication, for which his doctor had advised him not to drive or operate machinery for six months.

Officer Pocoroba testified that when he arrived at the scene of the collision, he observed beer cans and aerosol cans scattered inside Defendant's truck as well as across the road. In speaking with Defendant at the collision site, Officer Pocoroba observed that Defendant appeared disconnected from the severity of the situation and instead, expressed extreme concern with the damage to his vehicle after being told of Merchant's death. Officer Pocoroba testified that he smelled alcohol on Defendant's breath and Defendant appeared glassy-eyed and slurred his speech. Defendant was tested on site with an Alco-sensor, testing positive for the presence of alcohol. Based upon his observation, Officer Pocoroba suspected Defendant was impaired and that something other than alcohol was involved. After Defendant was arrested and taken to the hospital, his possessions were searched and Suboxone was found.

Defendant's treating physician at Vidant Medical Center, Dr. Weathers, testified regarding the results of Defendant's urinalysis screen. Dr. Weathers stated that benzodiazepines, a class of sedative drugs typically found in such drugs as Valium and Ativan, and cocaine were detected in Defendant's urine sample. Dr.

Weathers testified that the presence of these drugs could play a role in whether a person is alert or aware of the situation.

Ms. Rowland, an analyst in the Toxicology Section of the North Carolina State Crime Lab, testified that the results from her testing of Defendant's blood indicated the presence of alcohol, benzyl ethylene (a cocaine metabolite), Diazepam (a benzodiazepine such as Valium), Citalopram (an anti-depressant) and Sertraline (another anti-depressant called "Zoloft"). The State Crime Lab considers all five of these substances to be impairing substances. Ms. Rowland also testified that Defendant's blood was tested for "volatiles" like alcohol and that his blood contained the presences of alcohol at a concentration of 0.02 and also the presence of difluoroethane, a propellant used in "Dust Off" and other aerosolized products. Accordingly, viewing this evidence in the light most favorable to the State, the trial court did not err in denying Defendant's motion to dismiss where the State presented sufficient evidence to withstand Defendant's motion. Defendant's argument is overruled.

## III.   Conclusion

We affirm the trial court's order denying Defendant's motion to suppress, and conclude under the totality of the circumstances, exigent circumstances existed to compel a warrantless blood draw sample from Defendant. Additionally, we hold the trial court did not err in denying Defendant's motion to dismiss as the State presented evidence of Defendant's impairment sufficient to withstand the motion.

AFFIRMED.

Judges GRIFFIN and FLOOD concur.