IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1020

Filed 17 December 2024

Cabarrus County, No. 20 CRS 54757

STATE OF NORTH CAROLINA

       v.

CINQUANA LAZIAH DAYREIONA MOODY, Defendant.

Appeal by Defendant from judgment entered 23 January 2023 by Judge Martin B. McGee in Cabarrus County Superior Court. Heard in the Court of Appeals 3 April 2024.

*Attorney General Joshua H. Stein, by Assistant Attorney General John W. Congleton, for the State.*

*William D. Spence, for the defendant-appellant.*

STADING, Judge.

Cinquana Laziah Dayreiona Moody ("Defendant") appeals the trial court's judgment after a jury found her guilty of felony death by vehicle, among other charges not at issue. For the reasons below, we hold that the trial court did not err in denying Defendant's motion to dismiss the felony death by vehicle charge, did not plainly err or abuse its discretion in admitting Officer Jacob Huneycutt's testimony, and did not abuse its discretion by not intervening *ex mero motu* in the State's closing argument.

## I.  Background

On the morning of 10 September 2020, Defendant crashed her vehicle head-on into another vehicle driven by Ms. Brianna Simpson. The collision occurred when Defendant crossed from her lane into the oncoming lane occupied by Ms. Simpson. Defendant survived but Ms. Simpson was pronounced dead at the hospital afterward. The first witness on the scene of the accident, Joshua Whitley, saw Defendant's black SUV "flying" past him at over seventy miles per hour immediately prior to the collision. The posted speed limit was forty-five miles per hour. Mr. Whitley also observed that Defendant had crossed into the furthest lane of oncoming traffic.

Around the same time, Officer Huneycutt of the Kannapolis Police Department, received a "be on the lookout" ("BOLO") notification from police dispatch about a "possibly [ ] impaired driver." Shortly after receiving the notification, Officer Huneycutt "saw smoke up in the distance." Upon approaching the smoke's location, he observed two totaled vehicles—a white sport utility vehicle ("SUV") and a black SUV. Sergeant Matthew Hoehman of the Kannapolis Police Department also arrived at the scene to secure it for further investigation. Sergeant Hoehman obtained a search warrant to draw Defendant's blood for testing and to recover the SUVs' respective event data recorders ("EDR"). Defendant's EDR confirmed that, immediately prior to impact, she failed to remove her foot from the gas pedal or press the brake, and thus failed to decelerate below seventy miles per hour. Ms. Simpson's EDR, on the other hand, confirmed that she sharply decelerated to forty-one miles per hour and attempted to swerve away from Defendant.

Defendant's blood test showed the presence of delta-9-tetrahydrocannabinal ("THC"), the primary psychoactive substance in marijuana. More precisely, the results confirmed a THC concentration of 1.4 nanograms per milliliter of blood ("ng/ml") with a margin-of-error of ± 0.3 ng/ml. One of the State's expert witnesses testified that the test registers any THC amount above 1.0 ng/ml but cannot "connect a particular concentration of THC to a level of impairment." The witness also testified:

> THC can cause euphoria, reduced inhabitations, drowsiness, sedation, disorientation and confusion. And specifically with respect to driving, it can cause . . . decreased motor coordination, subjective sleepiness. It can cause lateral travel, meaning you're weaving from left to right. It can cause slowed reaction time, and it can cause impaired time and distance estimation, meaning it can cause you to misjudge how close you are to another vehicle. It can also cause reduced ability to maintain headway, meaning keeping track of your surroundings and . . . what all is around you as you're driving down a roadway.

Another expert witness testified "a potentially impairing side effect of marijuana" is "a lack of awareness of where you are as far as lane position, whose lane you're in, and lack of awareness of the vehicle you're headed toward."

Both in pretrial proceedings and at trial, the court denied Defendant's motion to dismiss the felony death by vehicle charge for lack of substantial evidence. Additionally, during the trial, the court admitted, over Defendant's objection, Officer Huneycutt's testimony about the BOLO. Furthermore, during closing arguments, a portion of the prosecutor's closing referenced Ms. Simpson's family. After the trial

court entered judgment, Defendant entered her notice of appeal.

## II.    Jurisdiction

Under N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2023), this Court has jurisdiction to consider Defendant's appeal of the trial court's judgment.

## III.    Analysis

Defendant raises three issues on appeal: Whether the trial court (1) erred in denying Defendant's motions to dismiss her felony death by vehicle charge and instead allow the State's case to go to the jury; (2) plainly erred or abused its discretion in admitting Officer Huneycutt's testimony concerning a BOLO for a "possibly [ ] impaired driver;" and (3) abused its discretion by not intervening *ex mero motu* during the State's closing arguments.

### A. Motion to Dismiss

First, Defendant argues that the trial court erred by denying her motion to dismiss her felony death by vehicle charges in favor of allowing the State's case to go to the jury.

We review this question of law *de novo*. *See State v. Sanders*, 208 N.C. App. 142, 144, 701 S.E.2d 380, 382 (2010). When considering a motion to dismiss, "the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002) (quoting *State*

*v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). Evidence is judicially substantive if it would "persuade a rational juror to accept a conclusion." *State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (2002) (citation omitted). A trial court must consider all evidence "in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom [.] . . ." *Powell*, 299 N.C. at 99, 261 S.E.2d at 118.

In relevant part, a person commits felony death by vehicle if they: (1) unintentionally cause the death of another person (2) were engaged in the offense of impaired driving, and (3) the commission of the offense of impaired driving is the proximate cause of the death. N.C. Gen. Stat. § 20-141.4(a1)(1)–(3) (2023). Since Defendant stipulated to unintentionally causing the victim's death in the crash, we address only the latter two felony death by vehicle elements. *Id.* § 20-141.4(a1)(2)–(3). For the reasons below, this Court holds that the State produced substantial evidence of these two elements necessary to survive Defendant's motion to dismiss.

### 1. *Impaired Driving*

Defendant asserts that the State did not provide substantial evidence of her impairment because it could not pinpoint when or how much THC she consumed before the collision. More specifically, Defendant argues that there was insufficient evidence that she had consumed a sufficient quantity of marijuana as to cause her to lose control of her bodily or mental faculties to any extent. After reviewing the record, we disagree.

"A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State . . . [w]hile under the influence of an impairing substance." *Id.* § 20-138.1(a)(1) (2023). Under our statutory scheme, an "Impairing Substance" is defined as: "Alcohol, *controlled substance under Chapter 90 of the General Statutes, any drug or psychoactive substance capable of impairing a person's physical or mental faculties*, or any combination of these substances." *Id.* § 20-4.01(14a) (emphasis added). "Under the Influence of an Impairing Substance" is statutorily defined as "[t]he state of a person having his physical or mental faculties, or both, *appreciably impaired by an impairing substance*." *Id.* § 20-4.01(48b) (emphasis added).

Both statutory and case law contemplate legal impairment arising under the influence of substances other than alcohol. *E.g.*, *id.* § 20-138.1(a)(1) ("while under the influence of an impairing substance"); *State v. Norton*, 213 N.C. App. 75, 81–82, 712 S.E.2d 387, 392 (2011) (upholding an impaired driving conviction based in part on cocaine metabolites found in a post-hospitalization blood test). The mere consumption or use of an impairing substance does not necessarily render someone impaired. *See State v. Harrington*, 78 N.C. App. 39, 45, 336 S.E.2d 852, 855 (1985) ("An effect, however slight, on the defendant's faculties, is not enough to render him or her impaired."). Indeed, "[t]he effect must be appreciable, that is, sufficient to be recognized and estimated, for a proper finding that defendant was impaired." *Id.* However, "evidence that a defendant consumed an impairing substance and then

- 6 -

drove in a faulty manner is sufficient *prima facie* to show appreciable impairment." *Norton*, 213 N.C. App. at 80, 712 S.E.2d at 391.

When addressing impaired driving in the context of alcohol, our Supreme Court held that evidence of consumption of that impairing substance, "*standing alone*, is no evidence that [a driver] is under the influence of an intoxicant." *State v. Rich*, 351 N.C. 386, 398, 527 S.E.2d 299, 306 (2000) (quoting *Atkins v. Moye*, 277 N.C. 179, 185, 176 S.E.2d 789, 793 (1970) (brackets in original). However, "the fact that a motorist has been drinking, when considered *in connection with faulty driving* . . . or other conduct indicating an impairment of physical or mental faculties, is sufficient *prima facie* to show a violation of [the impaired driving statute]." *Rich*, 351 N.C. at 398, 527 S.E.2d at 306 (citations and internal quotation marks omitted, emphasis added). Although the present matter does not involve alcohol, the text of our impaired driving statute applies to "impairing substance[s]," thereby logically extending the holding of *State v. Rich* to marijuana consumption. *See Id.*; *see also Norton*, 213 N.C. App. 75, 712 S.E.2d 387.

With respect to the impaired driving element, Defendant argues that the amount of THC shown in her system, without more evidence, is insufficient to survive a motion to dismiss. However, this view disregards that the State offered additional circumstantial evidence to meet its burden. The State did not only offer direct evidence of THC in Defendant's blood at the time of the crash. It also provided evidence of "faulty driving . . . indicating an impairment of physical or mental

faculties." *Id.* (citation omitted). For example, the EDR from Defendant's SUV showed that she did not decelerate below seventy miles per hour at any point before impact in the far-left opposite lane, while the victim's own recorder showed both a sharp deceleration and an attempt to swerve at the same time. Also, Mr. Whitley witnessed Defendant's SUV "fly past" him "completely on the wrong side" of the road immediately before the crash. Based on the results of Defendant's blood test and the additional supporting circumstantial evidence, we hold that the State adduced substantial evidence of impaired driving to withstand Defendant's motion to dismiss.

## 2. *Proximate Cause*

Defendant also asserts that the State did not provide substantial evidence that her impaired driving proximately caused Ms. Simpson's death. After careful consideration, we disagree.

A proximate cause is one:

> (1) which, in a natural and continuous sequence and unbroken by any new and independent cause, produces an injury; (2) without which the injury would not have occurred; and (3) from which a person of ordinary prudence could have reasonably foreseen that such a result, or some similar injurious result, was probable under the facts as they existed.

*State v. Smith*, 289 N.C. App. 707, 716, 891 S.E.2d 459, 465 (2023) (quoting *State v. Hall*, 60 N.C. App. 450, 454–55, 299 S.E.2d 680, 683 (1983)). To establish proximate cause, "the act of the accused need not be the immediate cause of the death[;] [the accused] is legally accountable if the direct cause is the natural result of his criminal

- 8 -

act." *Smith*, 289 N.C. App. at 716, 891 S.E.2d at 466 (citation omitted and brackets in original). If a person "of ordinary prudence could have foreseen an accident resulting from [impaired] driving," then there is substantial evidence to support a finding that the defendant's impaired state was a proximate cause of the victim's death. *State v. Leonard* 213 N.C. App. 526, 530-31, 711 S.E.2d 867, 871 (2011). The evidence is considered "in the light most favorable to the State, with all reasonable inferences drawn in the State's favor[.]" *Id.* at 530, 711 S.E.2d at 871 (citation omitted).

Proximate cause is also satisfied if there is more than one cause of the victim's death or injury and the defendant's impaired driving is *one of those causes*. *See id.* ("Defendant's violation [of the impaired driving statute] . . . need not be the *only* proximate cause of a victim's injury in order for defendant to be found criminally liable; a showing that defendant's action of driving while under the influence was *one* of the proximate causes is sufficient.); *see also State v. Cummings*, 301 N.C. 374, 377, 271 S.E.2d 277, 279 (1980) ("There may be more than one proximate cause and criminal responsibility arises when the act complained of caused or directly contributed to the death."); *see also State v. Bethea*, 167 N.C. App. 215, 221, 605 S.E.2d 173, 178–79 (2004) ("The defendant's acts need not have been the last or nearest cause. It is sufficient if they concurred with some other cause, acting at the same time, which in combination with it proximately caused the victim's death.").

Again, addressing proximate cause, the State met its burden of production to

survive Defendant's motion to dismiss. The crucial question here is whether, pursuant to the evidence, a reasonable juror could be persuaded to accept the conclusion that—under the unbroken, natural, and continuous sequence—Defendant's impaired driving was the proximate cause of Ms. Simpson's death. *See* N.C. Gen. Stat. § 20-141.4(a1)(2)–(3); *see also Smith*, 289 N.C. App. at 716, 891 S.E.2d at 466; *see also Leonard*, 213 N.C. App. at 531, 711 S.E.2d at 871 (holding that a reasonably prudent person could foresee that driving under the influence of an impairing substance could lead to the injury of another.). At trial, expert testimony provided THC is an impairing substance that "can cause . . . decreased motor coordination, . . . lateral travel, meaning you're weaving from left to right[,] . . . slowed reaction time, . . . [and] impaired time and distance estimation, meaning it can cause you to misjudge how close you are to another vehicle." All of these factors are present: The evidence from the EDRs and testimony of other witnesses showed that Defendant's driving was consistent with such impairment—she left her lane of travel crossing "completely on the wrong side" of the road, was "flying" seventy-three miles per hour in a forty-five mile-per-hour zone, failed to decelerate, failed to initiate her SUV's brakes, and collided head-on with Ms. Simpson's SUV, which in turn caused Ms. Simpson's death. Considering the evidence in the light most favorable to the State, we hold that the State presented substantial evidence of proximate causation to withstand Defendant's motion to dismiss. *Leonard*, 213 N.C. App. at 531, 711 S.E.2d at 871.

### B. BOLO Testimony

Second, Defendant argues that the trial court abused its discretion or plainly erred by admitting Officer Huneycutt's testimony concerning the BOLO notification. Defendant first asserts that the probative value of the testimony is substantially outweighed by the danger of unfair prejudice under N.C. Gen. Stat. § 8C-1, R. 403 (2023). Defendant further argues that this evidence amounted to inadmissible hearsay. *Id.* § 8C-1, R. 801–02. For the reasons below, we are unable to discern reversible error by the trial court's admission of the testimony.

### *1. Rule 403 Balancing*

Defendant asserts that Officer Huneycutt's BOLO testimony prejudiced her to the extent that it violated Rule 403. After careful consideration, we disagree.

During Defendant's pretrial motion, she argued that the admission of the BOLO testimony into evidence would violate Rule 403's balancing test—challenging the introduction of Officer Huneycutt's testimony on this topic. The trial court heard arguments and subsequently denied Defendant's motion. Thereafter, at trial, Officer Huneycutt testified that he received a BOLO for a "possibly [ ] impaired driver." Defendant's counsel objected but failed to state the specific grounds; however, the grounds are apparent upon review of the record. *State v. McLymore*, 380 N.C. 185, 192, 868 S.E.2d 67, 73 (2022) (quoting N.C. R. App. P. 10(a)(1)) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party

desired the court to make if the specific grounds were not apparent from the context."). The following colloquy took place during Officer Huneycutt's testimony:

> [STATE'S ATTORNEY]: How do you remember that day?
>
> [OFFICER HUNEYCUTT]: It was one of the worst days I've had, quite honestly, in law enforcement. I was traveling on the way home. And as I was travelling down Lane Street, we got a BOLO over the radio just saying that there was possibly an impaired driver on 85.
>
> [DEFENDANT'S ATTORNEY]: Objection, Alford.
>
> THE COURT: Overruled. Thank you.

Although Defendant did not clearly state the basis for her objection, we gather from the context of the record that the objection was rooted in Rule 403. *See* N.C. R. App. P. 10(a)(1). Accordingly, we review the trial court's ruling for an abuse of discretion. *See State v. Lail*, ___ N.C. App. ___, 903 S.E.2d 204, 208 (2024) (quoting *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)) ("We review Rule 403 rulings for abuse of discretion, which 'results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'").

Under Rule 403, a trial court may exclude otherwise relevant evidence "if its probative value is *substantially* outweighed by the danger of unfair prejudice . . . ." *Id.* § 8C-1, R. 403 (emphasis added). "Unfair prejudice, as used in Rule 403, means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." *State v. France*, 94 N.C. App. 72, 76, 379 S.E.2d

701, 703 (1989) (citations and internal quotation marks omitted). "Rule 403 calls for a balancing of the proffered evidence's probative value against its prejudicial effect. Necessarily, evidence which is probative in the State's case will have a prejudicial effect on the defendant; the question, then, is one of degree." *State v. Mercer*, 317 N.C. 87, 93–94, 343 S.E.2d 885, 889 (1986). The rule does not forbid a trial court from admitting relevant evidence even if "it may tend to prejudice the accused or . . . excite sympathy for the cause of the party who offers it." *State v. Mayhand*, 298 N.C. 418, 422, 259 S.E.2d 231, 235 (1979).

Here, Defendant maintains that the admission of the BOLO testimony prejudiced her because it impermissibly could persuade the jury to infer that she was driving impaired prior to the crash. However, the record demonstrates that the trial court adequately considered the possibility of prejudice, limited the scope in which the State could offer the evidence, and additionally offered to give a limiting instruction to that effect upon request:

> THE COURT: All right. We are out of the presence of the jury and the jury pool. From yesterday, we had, I believe, one outstanding issue left for me to address. And that is an objection to the information about the 911 call with regard to a possible impaired driver. After considering all of the arguments, in my discretion I'm going to overrule the objection with a limitation. I will allow the information be presented for the matter . . . other than for the truth of the matter asserted, I will allow it to provide context to . . . the officer's investigation. I will, however, consider offering a limiting instruction if you all think that would be helpful. And I'll allow you all to consider that in responding at a later time if you all would like for me to give a limiting

> instruction to the jury that it's not being offered for the
> truth of the matter asserted but for the purpose of the
> investigation, what the officer did next.

Thus, the record clarifies that the trial court recognized the possibility of prejudice

and limited the purpose for which the State could offer it "to provide context to . . .

the officer's investigation."

Turning next to Officer Huneycutt's testimony, the record supports the

purported use of this testimony—that it demonstrated "what he did next." Indeed,

after he testified to receiving the BOLO, Officer Huneycutt stated: "I heard it. Just

a few moments later I was travelling down the road, and I saw smoke up in the

distance. As I approached the smoke, it was apparent there had been a motor vehicle

crash." After providing this testimony, Officer Huneycutt did not mention the BOLO

again. We discern no merit to Defendant's contention that the prejudicial value of

the BOLO testimony outweighed its probative value.

### 2. *Hearsay*

Defendant next asserts that the trial court committed plain error because

Officer Huneycutt's BOLO testimony was inadmissible hearsay. We disagree.

"'Hearsay' is a statement, other than one made by the declarant while

testifying at the trial or hearing, offered in evidence to prove the truth of the *matter*

*asserted*." N.C. Gen. Stat. § 8C-1, R. 801(c) (emphasis added). "However, out of court

statements offered for purposes other than to prove the truth of the matter asserted

are not considered hearsay." *State v. Thomas*, 350 N.C. 315, 339, 514 S.E.2d 486, 501

(1999).

Since Defendant did not raise any hearsay arguments or objections at the trial, we review this issue for plain error. *See State v. Lawrence*, 365 N.C. 506, 512, 723 S.E.2d 326, 330 (2012) ("Unpreserved error in criminal cases . . . is reviewed only for plain error."). To demonstrate plain error, a defendant must show "that a fundamental error occurred at trial. A fundamental error requires a defendant to establish prejudice, *i.e.*, that the error had a probable impact on the jury's finding that the defendant was guilty." *State v. Carter*, 255 N.C. App. 104, 106, 803 S.E.2d 464, 466 (2017) (internal citations and quotations omitted).

Assuming, for purposes of our analysis, that it was error to admit the testimony because it was hearsay, Defendant, still, is unable to establish prejudice. *Id.* As discussed at-length above, other pieces of evidence sufficiently support that Defendant was driving while impaired. Thus, this BOLO statement of "possibly [ ] impaired driver" did not amount to such a fundamental error as to have a probable impact on the jury's verdict. *Id.*

## C. Intervention *Ex Mero Motu*

Third, Defendant argues that the trial court abused its discretion by not intervening *ex mero motu* in the State's closing argument to correct its allegedly emotional and improper appeals to the jurors' passions. In making this challenge, Defendant points to the State's references at closing "to the victim, her child, and her family were clearly improper appeals to sympathy and pity, and clearly calculated to

prejudice the jury."

During a closing argument, an attorney "may not become abusive, inject her personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record . . . ." N.C. Gen. Stat. § 15A-1230(a) (2023). This Court subjects a trial court's supervision of closing arguments to an abuse of discretion standard. *State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002). Our courts analyze the contextual discretion here through a two-step inquiry: (1) whether the prosecutor made an improper argument in fact and, if so, (2) whether the impropriety so grossly prejudiced the jury as to deny the defendant due process. *State v. Huey*, 370 N.C. 174, 179, 804 S.E.2d 464, 468 (2017). We reverse a conviction on the basis of a prosecutor's closing argument only if a defendant can show "both an improper argument and [resulting] prejudice . . . ." *Id.*

The following portion of the State's closing argument is challenged:

> We've heard a lot of science and a lot of numbers. You've heard a lot of People testify about a lot of things, and most of it has been about the Defendant. But what you don't hear about nearly enough and really what this case comes down to is that empty sear. It comes down to [Ms. Simpson].

> On September 10, 2020, [Ms. Simpson] didn't know it was the last time that her brother and sister would try to wake her up in the morning. [S]he didn't know it was the last time she would hug her daughter [ ] goodbye. She didn't know it was the last time she'd kiss her mother before she left or that she wouldn't see her dad when he got home from work.

- 16 -

. . . .

> On that day, [Ms. Simpson's] final moments were spent on the side of Lane Street in a mass of mangled metal and smoke. [Defendant] had a choice and she chose marijuana. [Defendant] had a choice and she cho[se] to drive. [Ms. Simpson] had no choices. But you do. You really have the last choice and the only one that matters.
>
> You have the choice to find [Defendant] responsible and guilty of exactly what she did. [Ms. Simpson] deserves it, and that's what justice requires. And that's what I'm asking you to do. Find [Defendant] guilty of felony death by motor vehicle."

After reviewing the record, for the reasons below, we hold that trial court did not abuse its discretion in failing to intervene *ex mero motu* in the State's closing arguments.

### 1. *Gross Impropriety*

Within the bounds of Section 15A-1230, "prosecutors are given wide latitude in the scope of their argument and may argue to the jury the law, the facts in evidence, and all *reasonable* inferences drawn therefrom." *Huey*, 370 N.C. at 180, 804 S.E.2d at 469 (emphasis added) (internal quotation marks and citation omitted). A prosecutor's argument is proper when "it is consistent with the record and does not travel into the fields of conjecture or personal opinion." *State v. Zuniga*, 320 N.C. 233, 253, 357 S.E.2d 898, 911 (1987).

In this case, even if we assume that the prosecutor's inferential comments are improper statements by the State in service of its closing argument—mere

impropriety is not enough; the comments must be so grossly improper and prejudicial as to deny the defendant due process protections. *Huey*, 370 N.C. at 180, 804 S.E.2d at 469. (citations omitted). To determine gross impropriety, we consider the prosecutor's statements "in context and in light of the overall factual circumstances to which they refer." *Id.* at 180, 804 S.E.2d at 470 (citations omitted). "When this Court has found the existence of overwhelming evidence against a defendant, we have not found statements that are improper to amount to prejudice and reversible error." *Id.* at 181, 804 S.E.2d at 470 (citations omitted). The inquiry must ultimately focus on "whether the jury relied on the evidence or on prejudice enflamed by the prosecutor's statements." *Id.* at 185, 804 S.E.2d at 473.

Here, the prosecutor's closing argument "did not manipulate or misstate the evidence[;]" rather, it focused on a walkthrough of Section 20-138.1(a)'s elements that the State had to prove to the jury beyond a reasonable doubt. *State v. McCollum*, 334 N.C. 208, 224, 433 S.E.2d 144, 152 (1993). Regularly infusing her argument with references to "reason and common sense," the prosecutor explained appreciable impairment, the multiple ways Defendant's actions met the proximate cause requirement, and THC as falling within the definition of "an impairing substance." These strategic choices by the prosecutor sufficiently reduced the likelihood that any potentially inflammatory statements influenced the jury's ultimate verdict. Moreover, we consider the substantial weight of the evidence against Defendant as a factor. *Id.* We therefore hold that the prosecutor's comments about the victim's

family, even if improper, did not amount to a denial of Defendant's due process right to a fair trial. *See Huey*, 370 N.C. at 180, 804 S.E.2d at 470; *see also McCollum*, 334 N.C. 208, 224–25, 433 S.E.2d 144, 152–53.

## IV.    Conclusion

For the reasons discussed above, we hold that the trial court did not err in denying Defendant's motion to dismiss the felony death by vehicle charge, neither plainly erred nor abused its discretion in admitting Officer Huneycutt's BOLO testimony, and did not abuse its discretion in not intervening *ex mero motu* in the State's closing argument.

NO ERROR.

Chief Judge DILLON and Judge COLLINS concur.